[L.A. No. 29805. In Bank. May 24, 1971.]

CHARLES J. ROUNDS CO., Plaintiff and Appellant, v. JOINT COUNCIL OF TEAMSTERS NO. 42 et al., Defendants and Respondents.

## COUNSEL

Findlay A. Carter and Robert P. Schifferman for Plaintiff and Appellant.

Brundage, Neyhart, Miller, Ross & Reich and Julius Reich for Defendants and Respondents.

## OPINION

**PETERS, J.**—Charles J. Rounds Co. (hereafter employer) appeals from the judgment of the trial court, which dismissed a complaint, charging breach of a collective bargaining agreement, on the grounds that the dispute which was the subject of the suit was covered by an arbitration clause in the agreement.

Employer is a general contractor operating in the Los Angeles area as a member of the Southern California Chapter of the Associated General Contractors of America (hereafter AGC). The AGC entered into a collective bargaining agreement with defendant unions in 1962, effective

July 1962 through June 1965. The agreement included a "no-strike" clause and detailed provisions for the arbitration of disputes.

The employer discharged a union member on June 28, 1963. On July 2, 3 and 5, the unions struck the employer at a job site where work was being done under contract for the Los Angeles County Flood Control District. During this period, the unions filed a grievance according to the requirements of the collective bargaining agreement. The disposition of this grievance does not appear in the record.

The employer filed a complaint against the unions seeking compensatory damages for breach of the "no-strike" clause in the agreement. In their answer, the unions alleged, as an affirmative defense, that whether the strike was in violation of the agreement was an issue within the scope of the arbitration clause and that the employer's failure to arbitrate according to the agreement's procedures was a bar to an action for damages. The unions' motion for summary judgment on the same grounds was denied by the trial court.

Subsequently, the unions made three separate attempts to force the employer into arbitration over the strike. In January 1965, the unions filed an application in the same court wherein the employer's suit was filed, for a stay of proceedings pending arbitration. This application was denied. In April 1965 the unions again moved for summary judgment in the trial court, and the motion was denied. Finally, the unions brought suit in federal district court in 1968 to compel arbitration. After the employer answered, pleading laches and the statute of limitations, the unions voluntarily withdrew the action.

The cause came to trial finally in 1969. By stipulation, the parties agreed to try the special defense first. The trial court found that the arbitration procedure set up by the agreement was intended to cover all disputes, including whether the work stoppage in question was a violation of the "no-strike" clause. The trial court ruled that the employer's suit was barred because it had failed to adhere to the requirements of the arbitration provisions of the agreement.

On appeal, the employer contends that the dispute is not covered by the arbitration clause of the agreement and, alternatively, that the appropriate remedy was not dismissal but a stay of the proceedings pending arbitration.

First, it is necessary to determine whether this dispute was arbitrable. To do so, we must interpret the language of the agreement according to the federal substantive law set down by the federal courts pursuant to section 301 of the Labor Management Relations Act (29 U.S.C. § 185(a)

(1964).) The body of federal substantive law is applicable to the employer in the instant case, because he was involved in activities which affect interstate commerce. (*Teamsters Union* v. *Lucas Flour Co.* (1962) 369 U.S. 95, 102-103 [7 L.Ed.2d 593, 598-599, 82 S.Ct. 571]; *Butchers' Union Local 229* v. *Cudahy Packing Co.* (1967) 66 Cal.2d 925, 930-931 [59 Cal. Rptr. 713, 428 P.2d 849].) ■ Also, state law, where "compatible with the purpose of § 301, may be resorted to in order to find the rule that will best effectuate the federal policy." (*Textile Workers Union* v. *Lincoln Mills* (1957) 353 U.S. 448, 457 [1 L.Ed.2d 972, 981, 77 S.Ct. 912].)

■ Federal policy favors the settlement of labor-management disputes by grievance and arbitration mechanisms; this has been expressed by Congress in section 203(d) of the Labor Management Relations Act: "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement. . . ." (29 U.S.C. § 173(d) (1964) quoted in *Butchers' Union Local 229* v. *Cudahy Packing Co., supra,* 66 Cal.2d at p. 931.)

■■ In the *Cudahy Packing Co.* case, we stated that "the function of a court in deciding whether a dispute is subject to arbitration 'is confined to ascertaining whether the party seeking arbitration *is making a claim which on its face is governed by the contract.*' (Italics added.) (*United Steelworkers of America* v. *American Mfg. Co.* (1960) 363 U.S. 564, 568 [4 L.Ed.2d 1403, 1407, 80 S.Ct. 1343].) 'An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*' (Italics added.) (*United Steelworkers of America* v. *Warrior & Gulf Nav. Co., supra,* 363 U.S. 574, 582 [4 L.Ed.2d 1409, at p. 1417].)" Applying these rules leads to the conclusion that the intention of the parties was to submit a strike dispute to arbitration.

In article IV of the agreement, the parties contracted that "all grievances or disputes arising between them over the interpretation or application of the terms of this Agreement shall be settled by the procedure set forth in Article V. . . ." A system of grievance and arbitration procedures was formulated in article V, which also provides: "All grievances, other than jurisdictional disputes, arising out of the interpretation or application of any of the terms or conditions of this agreement shall be submitted for determination and shall be determined by the procedure set forth in this Article, . . ."

The agreement in the instant case specified that both the employer and

the union were required to refer grievances or disputes to the Joint Adjustment Board composed of an equal number of representatives from both management and labor. Article V(C) of the agreement provided: "A Contractor shall refer a grievance or dispute to the Joint Adjustment Board through the appropriate employer Association. The Association shall then refer the grievance to the Joint Adjustment Board. . . ." If the board is unable to determine the matter, or if either party wishes to challenge a decision, the board is to select an impartial chairman from a Federal Mediation and Conciliation Service list.

These provisions clearly indicate that the parties intended to establish a system of dispute resolution, within which both the union and the employer could expect fair consideration of complaints which either might lodge against the other. The grievances which an employer might complain about are numerous. It is hard to believe that a strike would not be one of the things the employer would want to be able to "grieve" about. At least, it is reasonable to believe that the parties would have specifically excluded a strike from coverage, given the obvious fact that the processing of other employer grievances is so clearly provided for. No such provisions appear in the instant agreement.

On the basis of broad arbitration provisions like those in the instant case, the Supreme Court of the United States held, in *Drake Bakeries* v. *Bakery Workers* (1962) 370 U.S. 254, 257 [8 L.Ed.2d 474, 477, 82 S.Ct. 1346], that the parties intended to submit employer complaints of a strike to arbitration. There, the employer argued "that the parties cannot have intended to arbitrate so fundamental a matter as a union strike in breach of contract, and that only an express inclusion of a damage claim by the employer would suffice to require arbitration. But it appears more reasonable to us to expect such a matter, if it is indeed so fundamental and so basic to the company under the contract, to have been excluded from the comprehensive language of [the arbitration clause] . . . if the parties so intended." (370 U.S. 254, 259 [8 L.Ed.2d 474, 478]; see also *Don daRoza, Inc.* v. *Northern Cal. etc. Hod Carriers Union* (1965) 233 Cal.App.2d 96 [43 Cal.Rptr. 264].)

Plaintiff relies upon *McCarroll* v. *L. A. County etc. Carpenters,* 49 Cal.2d 45, 66-68 [315 P.2d 322]. However, *McCarroll* was decided prior to *Drake Bakeries,* and this court recognized in the opinion in *McCarroll* that some of the federal cases were in "irreconcilable conflict." (49 Cal.2d at p. 67.) The subsequent decision in *Drake Bakeries* has resolved the conflict in federal law, and *McCarroll* is no longer controlling. It may also be noted that in *McCarroll,* unlike the instant case, the procedure for reporting a grievance in order to initiate the grievance and arbitration pro-

cedure strongly indicated that the employer was not required to follow those steps in prosecuting his objection to a strike.

We conclude that it was the intention of the parties to include the instant strike within the coverage of the arbitration clause. The dispute should have been arbitrated.

We now turn to consider whether the relief granted was proper in this case—dismissal of the action—or whether a stay of judicial proceedings pending arbitration should have been granted.

Our courts for many years have held that, in the absence of waiver by the other party, an aggrieved party must seek to enforce his contractual right to arbitration before suing for breach of contract. " '[S]uch arbitration, or an unsuccessful attempt to secure the same, *is a condition precedent'* to the right to maintain an action for breach of the contract; . . ." (*Clogston v. Schiff-Lang Co., Inc.,* 2 Cal.2d 414, 416 [41 P.2d 555]; accord, *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers* (1961) 192 Cal.App.2d 268, 287 [13 Cal.Rptr. 446].)

A more often-cited line of reasoning reaching the same result as *Clogston* was enunciated by the United States Supreme Court in *Transcontinental & Western Air* v. *Koppal* (1953) 345 U.S. 653, 660 [97 L.Ed. 1325, 1330, 73 S.Ct. 906]. Although its decision was based in part on Missouri law, the court there characterized contractual arbitration as an administrative remedy that must be exhausted before seeking judicial relief. In *Cone* v. *Union Oil Co.* (1954) 129 Cal.App.2d 558, 563-564 [277 P.2d 464], this doctrine was introduced in California.

The Court of Appeal in *Cone* reasoned as follows: "It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies. [Citations.] This rule, which is analogous to the rule requiring the exhaustion of administrative remedies as a condition precedent to resorting to the courts (2 Cal.Jur.2d 304, § 184), is based on a practical approach to the myriad problems, complaints and grievances that arise under a collective bargaining agreement. It makes possible the settlement of such matters by a simple, expeditious and inexpensive procedure, and by persons who, generally, are intimately familiar therewith. . . ."

Several of our Courts of Appeal have adopted this reasoning, giving summary judgment to defendants or dismissing plaintiff's cause of action where failure to pursue a contractual arbitration remedy is proved as an affirmative

defense. In none of these cases, it may be added, did defendant *demand* arbitration, but rather raised failure of plaintiff to arbitrate as a *defense* to the cause of action. (See, e.g., *Griggs* v. *Transocean Air Lines* (1960) 176 Cal.App.2d 843, 847 [1 Cal.Rptr. 803]; *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board, Amalgamated Clothing Workers, supra,* 192 Cal.App. 2d 268, 287; *Don daRoza, Inc.* v. *Northern Cal. etc. Hod Carriers Union, supra,* 233 Cal.App.2d 96, 100-101, 103-104; *Leon Handbag Co.* v. *Local 213* (1969) 276 Cal.App.2d 240 [81 Cal.Rptr. 63].)

In each of the above-entitled cases, the fact situation was similar to the one at bar: Plaintiff had sued on the contract rather than arbitrate and had never sought to pursue its arbitration remedy. Moreover, each and every issue alleged in plaintiff's cause of action could have been settled through arbitration procedures. Finally, defendant did not waive its right to arbitration, but consistently asserted failure to pursue arbitration as an affirmative defense.

An alternative remedy for failure to arbitrate has long been provided by statute. Former section 1284 of the Code of Civil Procedure provided: "If any suit or proceeding be brought upon any issue arising out of an agreement providing for the arbitration thereof, the court in which such suit or proceeding is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration, shall stay the action until an arbitration has been had in accordance with the terms of the agreement; *provided,* that the applicant for the stay is not in default in proceeding with such arbitration."

In *Clogston* v. *Schiff-Lang Co., Inc., supra,* 2 Cal.2d 414, this court quoted section 1284 in full, but dismissed plaintiff's suit. The court apparently reasoned that (1) arbitration was a condition precedent to maintaining the cause of action, (2) plaintiff could not move for a stay because it was in default in proceeding with such arbitration, and (3) since defendant did not apply for a stay, but rather asserted failure to arbitrate as an affirmative defense, the suit must be dismissed.

Former section 1284 was utilized primarily where plaintiff's suit involved some issues that were not covered by or susceptible to arbitration. In such cases the entire case would not be dismissed for failure to arbitrate. The defendant, therefore, sought a stay of the action pending arbitration of the arbitrable issue or issues. For example, in *Squire's Dept. Store, Inc.* v. *Dudum* (1953) 115 Cal.App.2d 320 [252 P.2d 418], plaintiff sued in contract and tort. The arbitration clause covered contractual disputes only. Defendant's motion for a stay was granted pending arbitration of the contractual issue.

In *Homestead Sav. & Loan Assn.* v. *Superior Court* (1961) 195 Cal. App.2d 697 [16 Cal.Rptr. 121], plaintiff had filed a mechanic's lien and had then filed a complaint to foreclose the lien. In his complaint he asked first that the action be stayed and that the issue be arbitrated pursuant to contract. The order staying the action was sustained, the court holding that filing the lien did not constitute a waiver of arbitration rights, because, inter alia, the lien accomplished something not achievable through the arbitration process, namely, preserving the status quo of the property.

A defendant could also elect to use section 1284 rather than assert failure to arbitrate as an affirmative defense. In *Tas-T-Nut Co.* v. *Continental Nut Co.* (1954) 125 Cal.App.2d 351 [270 P.2d 43], both sides had made abortive attempts to submit the matter to arbitration. When defendant demurred to plaintiff's complaint on the ground that plaintiff had failed to arbitrate, its demurrer was overruled, perhaps because under section 1284 plaintiff was not "in default" in seeking arbitration. Defendant then chose to answer, seeking a stay in the action until the issue was arbitrated. (The stay was granted on appeal.)

We recognized defendant's power to elect his remedy in this fashion in *Local 659, I.A.T.S.E.* v. *Color Corp. Amer.* (1956) 47 Cal.2d 189, 195 [302 P.2d 294]: " 'If the repudiator brings an action in breach of his valid arbitration agreement the defendant can defend on the ground that arbitration is a condition precedent, or under a statute can obtain a stay or an order to arbitrate, or can counterclaim for damages. . . .' "

In December 1960, the California Law Revision Commission submitted to the Legislature a recommendation and study relating to arbitration. The commission's recommendations are susceptible to a number of interpretations. Given the prior statutory and case law discussed above, it would seem that the commission was most concerned. with cases in which only some of the issues raised are arbitrable. The commission's recommendations in pertinent part were as follows: "A pending action should not be stayed because the matter in controversy is subject to arbitration unless the party seeking the stay has taken or is taking action to compel arbitration. Existing law provides for a stay of judicial proceedings merely upon a showing that the parties have agreed to arbitrate the matter involved. This permits the existence of an agreement to arbitrate to be used as the basis for a dilatory plea." (*Id.,* at p. G-7.)

The commission then expanded upon this thought at page G-39: "Section 1284 of the Code of Civil Procedure provides that if a suit is brought upon an issue referable to arbitration, the court shall stay the action until the issue is arbitrated, provided that the party who applies for the stay is not in default upon the agreement to arbitrate.

"In 1935 the Supreme Court held, in *Clogston* v. *Schiff-Lang Co., Inc.* [2 Cal.2d 414] that a party may not sue unless arbitration has taken place or an effort has been made to get the other party to arbitrate. There has been relatively little litigation on this problem and several questions concerning what constitutes default are still open. For example, it is not clear how far the plaintiff must go in his attempt to compel the other party to arbitrate. Is it necessary that he resort to the statute for specific performance, or is an oral or written request sufficient?

"When a party requests a stay in a civil action on the basis of an agreement to arbitrate, he is using that agreement to arbitrate as a defense. But, under existing law, there is no provision that compels a person to arbitrate even though the action is stayed; hence, it may be necessary for the party whose action is stayed to commence another proceeding in a court having jurisdiction to order arbitration in order to compel the arbitration to proceed. If a party is going to request a stay because there is an arbitration agreement, he should show his willingness to proceed with the arbitration as the means of settling the dispute. The best way for the defendant to demonstrate this willingness is to obtain an order to compel arbitration.

"Section 2(d) of the Uniform Arbitration Act handles this problem by providing that the stay of an action shall be granted 'if an order for arbitration or an application therefor has been made under this section.' Thus the initiation of a proceeding to compel arbitration under the agreement becomes a condition precedent for the granting of a stay.

"It is recommended that this type of provision be included in the arbitration statute in order to state clearly the test that will be applied to determine the presence or absence of default."

The commission's mention of *Clogston* may have indicated an intent to overrule that case. On the other hand, it is quite possible that the commission feared *Clogston's* application to situations in which stays, rather than dismissals, were appropriate, and sought to forestall such application.

However the Legislature interpreted the commission's intent, it did enact the commission's proposed legislation. Section 1281.4 of the Code of Civil Procedure in pertinent part provides: "*If* an application has been made to a court of competent jurisdiction . . . for an order to arbitrate a controversy which is *an* issue involved in an action or proceeding pending before a court of this State and such application is undetermined, the court in which such action or proceeding is pending shall, upon motion of a party to such action or proceeding, stay the action or proceeding until the application for an order to arbitrate is determined and, if arbi-

tration of such controversy is ordered, until an arbitration is had in accordance with the order to arbitrate or until such *earlier* time as the court specifies. . . . [¶] If the issue which is the controversy subject to arbitration is severable, the stay may be with respect to that issue only." (Italics added.)

Since passage of section 1281.4, the case law has continued to reflect its dual origins. In *Don daRoza, Inc.* v. *Northern Cal. etc. Hod Carriers Union, supra,* 233 Cal.App.2d 96, and *Leon Handbag Co.* v. *Local 213, supra,* 276 Cal.App.2d 240, lower courts have continued to dismiss actions or grant summary judgment where (1) all issues raised are arbitrable, (2) the plaintiff has not pursued the arbitration remedy, and (3) neither party has asked for a stay in the proceedings.

*Zak* v. *State Farm etc. Ins. Co.* (1965) 232 Cal.App.2d 500 [42 Cal.Rptr. 908], represents the second line of authority. In *Zak,* a tort case involving, inter alia, the applicability of an insurance contract, not all issues raised were arbitrable. Defendant claimed that the suit should be dismissed, citing *Griggs, Cone, Clogston,* etc. The court replied: "In each of the cases last cited the moving plaintiff had either expressly or impliedly repudiated the agreement to arbitrate. In this case . . . . [p]laintiff was entitled to secure a judicial determination of [the applicability of contract provisions]. . . ." (232 Cal.App.2d at p. 509.) Proceedings were stayed rather than dismissed.

Similarly, in *Schwartz* v. *Leibel* (1967) 249 Cal.App.2d 761, 763 [57 Cal.Rptr. 831], plaintiff sought injunctive relief as well as damages. It was therefore held that plaintiff had not waived his right to insist upon arbitration by bringing suit.

Finally, the same Court of Appeal that later sustained the dismissal of plaintiff's suit in *Leon Handbag Co.* v. *Local 213, supra,* 276 Cal.App.2d 240, also decided *Ross* v. *Blanchard* (1967) 251 Cal.App.2d 739 [59 Cal. Rptr. 783]. In *Ross* plaintiffs filed suit and attached defendants' property. Defendants answered, rather than demurring, "including as an affirmative defense a *demand* for arbitration; . . ." (*Id.,* at p. 740; italics added.) The trial court stayed proceedings and ordered arbitration. After an award in favor of plaintiff, and pursuant to petition, the court confirmed the arbitration award (see Code Civ. Proc., § § 1285-1287.6) and discharged the attachment. The Court of Appeal reversed the discharge of the attachment, holding that defendants might have been entitled to discharge after arbitration was ordered, but had not so moved, and that the discharge was improper after confirmation of the award because plaintiffs would be entitled to it to secure the satisfaction of the judgment.

The holding in *Ross* is not in issue here. What is instructive about *Ross* and the same court's later decision in *Leon Handbag* is that in *Ross,* where proceedings were merely stayed, defendants *demanded* arbitration; in *Leon Handbag* a dismissal was sustained because defendants elected to assert plaintiffs' failure to arbitrate as an affirmative defense only. In *Ross* the court recognized that "an agreement to arbitrate is an affirmative defense" (251 Cal.App.2d at p. 742), but was not confronted by a situation in which a dismissal was sought. When defendants did elect to demur in *Leon Handbag,* and where no other issues were before the court, dismissal was ruled proper relief.[1]

The distinctions implicit in the decisions discussed above should be followed. ■ Specifically, where the only issue litigated is covered by the arbitration clause, and where plaintiff has not first pursued or attempted to pursue his arbitration remedy, it should be held that (1) plaintiff has impliedly waived his right to arbitrate, such that defendant could elect to submit the matter to the jurisdiction of the court; (2) defendant may also elect to demur or move for summary judgment on the ground that the plaintiff has failed to exhaust arbitration remedies; and (3) defendant may also elect to move for a stay of proceedings pending arbitration if defendant also moves to compel arbitration. Plaintiff may of course sue preliminarily to enforce its arbitration rights.

■ Where plaintiff has attempted to exhaust its arbitration remedy or raises issues not susceptible to arbitration or not covered by the arbitration agreement, defendant may not merely assert failure to arbitrate an issue as an affirmative defense; a stay rather than dismissal of the suit is then proper. Defendant must therefore demand arbitration if it seeks such a stay.

■ In the instant case plaintiff at no time attempted to pursue its arbitration remedy. The no-strike clause was contractually subject to arbitration. ■ The relief sought, damages, is traditionally within an arbitrator's power to award. (*Schwartz* v. *Leibel, supra,* 249 Cal.App.2d 761, 763.) ■ Defendant until long after this suit was filed sought to compel arbitration, and asserted plaintiff's failure to arbitrate or seek arbitration as an affirmative defense. What remedies plaintiff may have

---

[1]The federal courts seem to have pursued a similar course. In *Drake Bakeries* v. *Baker Workers, supra,* 370 U.S. 254, 264, 266 [8 L.Ed.2d 474, 481, 482], the United States Supreme Court, *upon motion of defendants,* stayed proceedings pending arbitration. In the subsequent case of *Jefferson City Cabinet Co.* v. *International U. of E., R. & M. W.* (6th Cir. 1963) 313 F.2d 231, the Court of Appeals for the Sixth Circuit sustained dismissal of plaintiff's suit where defendant demurred on the ground of failure to arbitrate.

to now compel arbitration must await assertion of that right. Defendant was entitled to the dismissal. The trial court's judgment is affirmed.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Ford, J.,* concurred.

---

*Assigned by the Chairman of the Judicial Council.