[Civ. No. 52124. Second Dist., Div. Five. Apr. 25, 1978.]

INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, AFL-CIO, LOCAL NO. 433, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; BETHLEHEM STEEL CORPORATION, Real Party in Interest.

## COUNSEL

Van Bourg, Allen, Weinberg & Roger, Victor J. Van Bourg and David A. Rosenfeld for Petitioner.

No appearance for Respondent.

Parker, Milliken, Clark & O'Hara, Thomas P. Laffey, Everett F. Meiners and Linda S. Klibanou for Real Party in Interest.

## OPINION

**HASTINGS, J.**—Petitioner seeks a writ of prohibition directing respondent court to dismiss real party's pending cause of action. The facts are these: On May 22, 1974, petitioner and real party in interest were parties to a collective bargaining agreement, one provision of which was that no strikes or work stoppages would occur during the term of the contract. On that date, real party in interest was engaged in construction of a Veterans' Administration hospital in West Los Angeles and a financial building in Encino. Real party's superintendent on the hospital project, on May 22, 1974, terminated an employee who was a member of the petitioner union. Petitioner unsuccessfully demanded his reinstatement. Petitioner's members then walked off the hospital job. The following day petitioner's members walked off the financial center job. This dispute had not been

resolved by May 28, 1974, and real party filed suit in respondent court seeking temporary and permanent injunctive relief and damages for breach of the no-strike clause of the contract. In its answer to the complaint, filed July 10, 1974, petitioner asserted as an affirmative defense that real party's cause of action was barred by real party's failure to process the dispute through the grievance and arbitration provisions of the collective bargaining agreement.

On December 13, 1974, real party filed an amended complaint citing six additional construction projects on which work stoppages had taken place. Petitioner filed its answer to the amended complaint on December 26, 1974, again asserting as an affirmative defense real party's failure to follow the grievance and arbitration provisions of the collective bargaining agreement. The contentions of the affirmative defense were reiterated as the basis of a motion for summary judgment filed by petitioner on December 29, 1975. The motion was heard and denied on February 4, 1976. On July 21, 1977, petitioner again moved for summary judgment before a different judge of respondent court. In that motion petitioner sought both a determination that the cause of action for damages was barred by virtue of real party's failure to exhaust the contractual grievance procedure and also a determination that real party's demands for injunctive relief were moot.

On August 2, 1977, real party filed its opposition to petitioner's motion for summary judgment and its own motion for summary adjudication of issues asserting that the contractual grievance procedure was "employee-oriented" and that it did not provide for the employer to initiate a grievance. A hearing was held on both motions on August 10, 1977. The minute order of that date indicates that petitioner's motion was granted as to the issue of injunctive relief and denied in all other respects, and that real party's motion was granted. On August 23, 1977, respondent filed an order declaring that real party was "not compelled to arbitrate the claims made in the . . . lawsuit."

On October 11, 1977, petitioner filed its petition for a writ of prohibition in this court. Trial was then scheduled for November 14, 1977. We summarily denied the petition. On October 24, 1977, petitioner filed a petition for hearing in the Supreme Court. On November 25, 1977, the Supreme Court granted the hearing and transferred the matter back to us with directions to issue an alternative writ of prohibition and to calendar the matter for oral argument, which we did, staying the trial

which respondent meanwhile had continued to February 27, 1978. In our alternative writ we notified the parties that we would take judicial notice of the contents of the superior court file (Evid. Code, § 459), which we have done.

■ It is undisputed that the collective bargaining agreement involved in the present proceeding affects an industry engaged in interstate commerce. The ground rules governing the present dispute therefore are those contained in section 301 of the Labor Management Relations Act, 29 United States Code section 185(a), and in the sizeable body of caselaw interpreting that act. Jurisdiction to enforce the provisions of such collective bargaining agreements is vested concurrently in state and federal courts, subject to the proviso that state courts exercising such jurisdiction must apply federal substantive law. (*Butchers Union* v. *Farmers Markets,* 67 Cal.App.3d 905, 910 [136 Cal.Rptr. 894].) ■ Federal policy strongly favors the settlement of labor-management disputes through the grievance and arbitration procedures incorporated in collective bargaining agreements. "[T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement. [¶] Apart from matters that the parties specifically exclude, all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. The grievance procedure is, in other words, a part of the continuous collective bargaining process. It, rather than a strike, is the terminal point of a disagreement." (*Steelworkers* v. *Warrier & Gulf Co.,* 363 U.S. 574, 581 [4 L.Ed.2d 1409, 1416-1417, 80 S.Ct. 1347].)

The role of the courts in implementing this policy was explained by the Supreme Court in the same case. ■ "The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of

settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make the award he made. An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." (*Steelworkers* v. *Warrier & Gulf Co., supra,* 363 U.S. 574, 582-583 [4 L.Ed.2d 1409, 1417-1418]. Fn. omitted.)

■ The first issue which we must decide is whether or not it can be said "with positive assurance" that the grievance procedure in the subject collective bargaining agreement is "employee-oriented," as real party contends, or whether it is reasonably susceptible to the interpretation that it was intended to include employer initiated grievances as well.

The contractual provision for the resolution of disputes provides: "DISPUTES [¶] Jurisdictional disputes shall be settled in accordance with the procedure established by the Building and Construction Trades Department of the AFL-CIO or in special cases as agreed and established by the Association with one or more of the International Unions without interruption of work or delay of the job. [¶] In the conduct of any work under this Agreement, the Employer agrees that there shall be no lockout; and the Association agrees that there shall be no strike, slowdowns or stoppage of work. Any and all disputes other than jurisdictional, involving interpretation or application of this Agreement or of Local Agreements, which cannot be resolved locally, *shall* be referred to the General President of the Association; and he or his representative shall meet with the representative of the Employer so that the parties may ascertain the facts and render a decision thereon. [¶] Where a dispute relates to the scale of wages, any decision rendered shall not be retroactive beyond the date on which the dispute originated. [¶] In case the representatives of the Employer and the Association are unable to settle such dispute they *may* refer it to an agency mutually agreeable to them to which mutually agreed to facts may be submitted for the purpose of having such agency hear and pass upon the case in dispute." (Our italics.)

Real party contends that the provision for reference of disputes to the general president of the association compels the interpretation that the

grievance procedure is restricted to employee initiated grievances as the company could not reasonably have intended that the head of the union would represent the company in processing a grievance. We do not agree that this result would ensue upon initiation of the grievance procedure by the employer. The referral of grievances to the general president is merely the method for activating the grievance machinery, nothing more. Paragraph two of the quoted portion of the contract clearly states that upon such referral, the general president is to meet with representatives of the employer in a mutual effort to ascertain the facts and render a decision. Furthermore, the immediate juxtaposition of the no-strike provisions of the subject contract and the delineation of the method for resolving disputes provides strong support for the proposition that the grievance machinery was intended to include the employer's complaints, since only the employer would have a grievance arising out of a breach of the no-strike provision.

A comparison of the dispute provisions of the subject agreement with some which the federal courts have labeled "employee-oriented" is illuminating. Thus, in *Atkinson* v. *Sinclair Refining Co.,* 370 U.S. 238, 243, 250 [8 L.Ed.2d 462, 467, 471, 82 S.Ct. 1318], the grievance provision of the contract specified that it was for the purpose of adjusting *employee* grievances and disputes and provided that an employee individually or with his committeeman might seek adjustment of his dispute with his foreman and, if unsatisfied, might thereafter submit his grievance in writing, on forms supplied by the union, to a committee which would investigate his claim and further pursue it, if the committee deemed it meritorious. In exceptional cases workmen's committees were to have the right to initiate grievances. A critical limitation in the contract provided that local arbitration boards could consider only individual or local employee or local committee grievances.

In *Boeing Co.* v. *International Union, U.A., A. & A. Imp. Wkrs.,* 370 F.2d 969, the contract contained a four-step grievance procedure, exhaustion of which was a prerequisite to arbitration. Step one called for the employee, personally or through his shop steward, to submit his complaint to the foreman. The remaining steps called for review by management representatives on successive appeals by the shop steward, the area committeemen, or the chairman of the shop committee.

Similarly, in *G. T. Schjeldahl Co., Packaging Mach. D.* v. *Local Lodge 1680, etc.,* 393 F.2d 502, the contract provided for employees to register a

grievance with the steward who would present it to the immediate supervisor. If unsettled at this point the grievance was to be reduced to writing and given to the company's manager of industrial relations. The grievance could then be pursued through two additional steps. Within 60 days of the company's answer at this last step, the union was to notify the company in writing of its intention to accept the company's answer, withdraw the grievance or submit to arbitration. A further proviso that either party could compel arbitration at this point was interpreted in context to relate only to employee initiated grievances.

In *Friedrich* v. *Local No. 780, IUE-AFL-CIO-CLC,* 515 F.2d 225, the contract provided for a five-step grievance procedure for employees, going through the foreman, the steward and the chief steward who consulted with various escalating levels of management. Step 6 provided that if a satisfactory settlement had not been reached at step 5, the union grievance committee could request arbitration. There was a further provision that either side could initiate arbitration, but only of a grievance pursued through the six-step procedure—in other words, an employee initiated grievance.

In *Affiliated Food Distributors, Inc.* v. *Local Union No. 229,* 483 F.2d 418, the contract provided that any grievance which arose could be taken up at the first step by the union steward, at the next step by the union business representative, and thereafter through arbitration.

By contrast, in *Reid Burton Const.* v. *Carp. Dist. C. of S. Colo.,* 535 F.2d 598, the contract dealt with employee initiated grievances. It then further provided that if the two parties were unable to reach a settlement, "the aggrieved party" was to notify the "other party" that the dispute was being referred to a board of adjustment. The quoted language was held to make arbitration mutually available and the employer's allegation of a violation of the no-strike clause was ruled to be subject to arbitration.

As the comparison vividly demonstrates, the grievance provisions in the subject contract differ markedly from those which the courts have found to be employee oriented. First, the provision here under scrutiny refers to "[a]ny and all disputes, other than jurisdictional, involving interpretation or application of this Agreement . . ." There is neither an express exclusion of employer complaints nor provision that the dispute be raised in the first instance by the employee. Broad language such as that found here has consistently been. held to include employer griev-

ances, specifically a claim for damages for breach of a no-strike clause. (*Drake Bakeries* v. *Bakery Workers,* 370 U.S. 254, 257 [8 L.Ed.2d 474, 477, 82 S.Ct. 1346]; *Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42,* 4 Cal.3d 888 [95 Cal.Rptr. 53, 484 P.2d 1397].) As was stated in *ITT World Communications, Inc.* v. *Communications Workers,* 422 F.2d 77, 82: "The combination of a broad arbitration clause and vague or no exclusionary language has usually, since the Trilogy [*Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564 (4 L.Ed.2d 1403, 80 S.Ct. 1343), *Steelworkers* v. *Warrier & Gulf Co., (supra),* 363 U.S. 574; *Steelworkers* v. *Enterprise Corp.,* 363 U.S. 593 (4 L.Ed.2d 1424, 80 S.Ct. 1358)], led to arbitration. [Citations.] In short, ITT's arguments at most raise a doubt whether the arbitration clause covers the dispute, but we are instructed to resolve that doubt 'in favor of coverage.' . . ." The arbitration provision in the subject contract is clearly mutual. Since there is no basis in the contract for treating it as severable from the remainder of the grievance machinery, the entire provision relating to disputes must be found to relate to all grievances, other than jurisdictional, whether employee or employer initiated. Under the ground rules previously alluded to which govern our deliberations in this case, the union is entitled to a motion for summary judgment even against the type of factual allegations made by real party herein as to the scope of the grievance procedure. (*International U. of Elec., R. & M. Wkrs.* v. *General Elec. Co.,* 332 F.2d 485, 487.)

■ Real party next argues that the arbitration provision of the contract is permissive and that neither party has requested arbitration. Real party raised this issue for the first time in its return to the alternative writ. We address the issue despite its belated appearance in this litigation. Real party relies upon *Deaton Truck Line, Inc.* v. *Local Union 612, etc.,* 314 F.2d 418, 422, wherein the court held that the use of the word "may" in an arbitration clause should be construed to give either party the option to require arbitration. Real party would take this holding one step further, construing it to mean that where the defendant has failed to demand arbitration, the plaintiff is free to sue. *Deaton* cannot be used as authority for this proposition, however. That lawsuit was one by a union to compel arbitration.[1] It was resisted by an employer who argued that the permissive language of the arbitration clause gave it the right to refuse the union's demand. The *Deaton* holding is limited to those facts. It is not relevant to the instant situation where the union did not seek

---

[1]It is worth noting that the arbitration clause in *Steelworkers* v. *American Mfg. Co.,* 363 U.S. 564 [4 L.Ed.2d 1403, 80 S.Ct. 1343], was also framed permissively and arbitration was also compelled.

arbitration, but merely asserted as an affirmative defense the employer's failure to exhaust its contractual remedies.

The case which is in point is *Bonnot* v. *Congress of Independent Unions Local # 14,* 331 F.2d 355, where a suit for damages was brought by a union without alleging that its claims had been processed through the contractual grievance procedure. It was held that the employer's motion to dismiss should have been granted despite the permissive language of the arbitration clause. The court ruled that the obvious purpose of the word "may" was to give the aggrieved party a choice between arbitration or abandonment of its claim. This ruling is sound. The party not aggrieved is not obliged to demand arbitration; but he has a right to expect that the aggrieved party will do so before he resorts to litigation.[2]

Our own Supreme Court has set forth the following guidelines for the courts: "Specifically, where the only issue litigated is covered by the arbitration clause, and where plaintiff has not first pursued or attempted to pursue his arbitration remedy, it should be held that (1) plaintiff has impliedly waived his right to arbitrate, such that defendant could elect to submit the matter to the jurisdiction of the court; (2) defendant may also elect to demur or move for summary judgment on the ground that the plaintiff has failed to exhaust arbitration remedies; and (3) defendant may also elect to move for a stay of proceedings pending arbitration if defendant also moves to compel arbitration." (*Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42, supra,* 4 Cal.3d 888, 899.) The second enumerated situation exists in the case at bar.

Furthermore, the initial step in the grievance procedure—referral of the dispute to the General President of the Association for consultation between him and a representative of the employer—is expressly mandatory and real party has made no showing that it ever initiated this procedure with respect to the issue of damages for breach of the no strike clause. Rather, real party has throughout the proceedings both here and below disavowed any obligation to do so.[3]

---

[2]*Nemitz* v. *Norfolk and Western Railway Company,* 436 F.2d 841, upon which real party also relies, is totally inapposite. There, individual employees had sought unsuccessfully to compel their union to seek arbitration. The court held that the union's refusal to do so could not bar the employees' right to sue the employer. The court found that under the circumstances the employees had exhausted their contractual remedies by demanding that the union seek arbitration.

[3]Real party submitted as part of its opposition to petitioner's motion for summary judgment below the affidavit of one R. J. Ryte, its director of personnel services, in which

■ Real party next contends that petitioner has waived its right to assert that real party must resort to arbitration. The waiver issue really subdivides into two issues. The first involves the question of whether petitioner has, through dilatoriness, waived its right to obtain review of respondent's ruling by way of an extraordinary writ. We initially resolved this issue in real party's favor when we summarily denied the initial petition. It was our feeling at that time that petitioner's failure to seek a writ after respondent denied its first motion for summary judgment, coupled with the fact that the petition was not presented to us for two months after the ruling sought to be reviewed and only one month before the scheduled trial, provided an adequate reason to leave petitioner to its remedy on appeal. The Supreme Court obviously disagreed with us. When it granted the hearing in this matter and ordered us to issue an alternative writ, it in effect determined that petitioner was entitled to a pretrial ruling on the merits of the issue posed by the petition, despite its delay in presenting it to us.

The second aspect of the waiver issue involves the question of whether petitioner, through its conduct of the litigation below, has waived its right to insist upon real party's compliance with the contractual grievance procedure. We find that it has not. Petitioner first asserted its affirmative defense based upon the grievance procedure in its answer filed less than two months after the filing of the complaint. It reasserted that defense in its answer to the amended complaint, filed less than two weeks after filing of the amended complaint, and pursued that defense through two motions for summary judgment. Thus, petitioner can hardly be said to have waived its right to raise the issue. The instant case contrasts sharply with *E. T. Simonds Const. Co.* v. *Local 1330 of Int. Hod Carriers, etc.,* 315 F.2d 291, relied on by real party, wherein the defendant had filed an

Ryte averred that real party had never during the term of the existing contract, or the previous one, initiated a grievance, but that it had always regarded the grievance machinery as employee oriented. Petitioner submitted in support of its motion for summary judgment the affidavit of one Juel D. Drake, its general secretary, in which it alleged that real party had filed grievances in the past and had sent telegrams to the association, copies of which were attached to the affidavit, in which real party complained about the work stoppages which led to the present lawsuit and urged that the underlying employee grievances which had led to the stoppages be processed through the grievance procedure. In a petition for rehearing to this court real party asserts that these telegrams demonstrate that it had exhausted the first step of the grievance procedure. At most, however, the telegrams show an effort to initiate the procedure with respect to the issue of getting the men back to work—an issue that related to the portion of the complaint which sought injunctive relief and which has long since been declared moot. There is no showing whatever of any effort ever to invoke the grievance procedure with respect to the issue of damages for breach of the no-strike clause.

answer admitting the court's jurisdiction, had litigated the matter for a full year after the filing of the complaint, and had then sought arbitration.

Real party complains that it would be unfair to allow the suit to be dismissed now that the contract is no longer in force, thus leaving it without a remedy. We express no opinion one way or the other as to real party's present right to compel arbitration. (*Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42, supra,* 4 Cal.3d 888, 899-900.) If real party is indeed without a remedy the blame, if any, for that situation falls upon real party which chose to pursue its lawsuit in the face of a meritorious defense, and not upon petitioner which never refused to arbitrate, and which clearly and quickly asserted its defense.

Real party, having never sought arbitration, is not now entitled to a stay of the proceedings. Petitioner, never having waived its right to insist upon exhaustion of real party's contractual remedies, is entitled to have the pending cause of action dismissed. (*Charles J. Rounds Co.* v. *Joint Council of Teamsters No. 42, supra,* 4 Cal.3d 888, 899.)

Let a peremptory writ of prohibition issue directing respondent court to desist from any further proceedings except to dismiss the case now pending entitled Bethlehem Steel Corporation, plaintiff, v. International Association of Bridge, Structural and Ornamental Iron Workers, AFL-CIO, et al., defendants, Los Angeles Superior Court No. C 89560.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied May 25, 1978, and the opinion was modified to read as printed above. The petition of the real party in interest for a hearing by the Supreme Court was denied June 22, 1978.