Filed 6/22/22  Ventura County Prof. Peace Officers Assn. v. County of Ventura CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| VENTURA COUNTY PROFESSIONAL PEACE OFFICERS ASSOCIATION,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>COUNTY OF VENTURA, et al.,<br><br>Defendants and Appellants. | 2d Civ. No. B313103<br>(Super. Ct. No. 56-2019-00535968-CU-WM-VTA)<br>(Ventura County) |

Respondent Ventura County Professional Peace Officers Association (Union) sued appellant Ventura County Probation Agency (Agency) over the Agency's failure to timely complete performance reviews of its corrections officers.  The Agency moved to compel the action to arbitration (Code Civ. Proc., § 1281.2), citing a provision of their Memorandum of Agreement (MOA) requiring the Union to submit certain complaints to a multi-step grievance procedure culminating in binding arbitration.  The trial court found no valid agreement to arbitrate existed and denied the motion.  We reverse.

The MOA requires the Union and its members to resolve disputes with the Agency through a grievance procedure. The term "grievance" is defined to include any complaint or dispute arising from a violation of the MOA's terms. The Union's allegations fall within this broad definition. (MOA, § 3002.)[1] As such, the Union was required to resolve its claims through the grievance procedure, or, in the alternative, to show the Agency waived or repudiated the procedure. The Union did neither. The trial court should have granted the Union's motion to compel.

FACTUAL AND PROCEDURAL BACKGROUND

The Union serves as the collective bargaining unit for the Agency's corrections officers. The MOA governs labor relations between the Agency and the Union's members.[2] The MOA includes a grievance procedure "intended to create an orderly and fair method for processing grievances and resolving disputes." Complaints may be filed by individual members as well as by the Union itself. Member complaints are resolved in four steps. The member must first discuss it informally with their immediate supervisor. They may appeal the supervisor's decision to the Division Head (the second step) then to the Agency Head (the third). The fourth and final step is submitting the complaint to a mutually agreeable arbitrator, or, if the Agency and member cannot agree, to one selected from a list provided by the

---

[1] All section references are to the Agency's MOA unless otherwise noted.

[2] The record contains excerpts from the MOAs for 2014-2018 and 2018-2021. We grant the Union's request for judicial notice of the MOA for 2021-2024. The provisions relevant to this appeal are identical in each version.

California State Mediation and Conciliation Service.[3]  The process is identical for complaints raised by the Union, but the MOA permits the Union to skip the informal first step and initiate the process directly with the responsible Division Head.

The MOA requires the Agency to review each Union member's performance annually.[4]  The Agency completed a review of corrections officer Matthew Breslin in March of 2016.  It covered the 2015 work year.  Breslin's supervisor assessed him as performing at or above expectations in most categories.  However, the supervisor also commented that Breslin "continually resisted and voiced his disapproval of" the Agency's effort to implement a program designed to better treat and manage detained youth, especially those with mental health issues.  Breslin believed these comments were inaccurate and overly subjective.  He submitted a written rebuttal giving his own account of the incidents in question.  The County attached the rebuttal to his review as required by the MOA but did not respond further.

Nearly three years passed.  In February of 2019, Breslin initiated the MOA's grievance procedure during an informal discussion with his direct supervisor.  He followed up with formal written complaints to his Division Head (the second step) and Agency Head (the third).  Breslin accused the Agency of completing his 2015 review three months past the deadline and

---

[3] The California State Mediation and Conciliation Service is a division of the Public Employment Relations Board which provides mediation and arbitration services in labor disputes involving public agencies.  (Gov. Code, § 3600 et seq.)

[4] The employee must receive the review no later than 14 days prior to their work anniversary.  (§ 1901.)

reiterated his previous concerns about his supervisor's objectivity and veracity. He requested the Agency modify the review's scores and comments to align with MOA criteria.

Agency Head Tim Dowler told Breslin his complaints were excluded from the grievance procedure. The only method available to voice his concerns was to attach a rebuttal to his review, which he had already done. Even if the complaints were subject to the procedure, Dowler concluded the MOA's 21-day filing deadline had long since passed. He declined to modify the review but acknowledged it was important "that performance reviews are drafted, reviewed and submitted in a timely fashion and in compliance with the MOA and best practices." For reasons not stated in the record, Breslin and the Agency stipulated Breslin's grievance was not subject to arbitration.

Breslin filed a combined petition for writ of mandate and complaint for breach of contract against the Agency. The Union joined as his co-plaintiff. The scope of their lawsuit went beyond Breslin's original complaint. They now alleged the Agency "engaged, and continue[d] to engage, in widespread failure" to timely review corrections officers.[5] They sought: a peremptory writ directing the Agency to comply with employee review requirements; an order declaring the Agency's "contractual and administrative obligations"; attorney's fees; and monetary damages. The trial court overruled the Agency's demurrer. After limited discovery, the Agency moved for summary judgment of Breslin's claims and moved to compel the Union's claims to arbitration under the MOA's grievance procedure. The court

---

[5] We cite from the operative pleading, i.e., the Union and Breslin's First Amended Verified Petition for Writ of Mandate and Complaint for Breach of Contract and Declaratory Relief.

4

denied the motion to compel arbitration but granted summary judgment against Breslin.

The Agency appeals the denial of its motion to compel arbitration. (See Code Civ. Proc., § 1294, subd. (a) ["An aggrieved party may appeal from: [¶] (a) An order dismissing or denying a petition to compel arbitration"].) Breslin does not challenge entry of summary judgment and is not a party to this appeal.

## DISCUSSION

### A. The Union's Dispute with the Agency Is Subject to the MOA's Grievance Procedure

"'It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies.'" (*Charles J. Rounds Co. v. Joint Council of Teamsters* (1971) 4 Cal.3d 888, 894 (*Charles J. Rounds Co.*), quoting *Cone v. Union Oil Co.* (1954) 129 Cal.App.2d 558, 563.) "When, as here, no conflicting extrinsic evidence is introduced to aid the interpretation of an agreement to arbitrate, the Court of Appeal reviews de novo a trial court's ruling on a petition to compel arbitration." (*California Correctional Peace Officers Assn. v. State of California* (2006) 142 Cal.App.4th 198, 204, citing *Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1448-1449.) "If such an agreement exists, the court must order the parties to arbitration unless arbitration has been waived or grounds exist to revoke the agreement." (*Id.* at p. 205, citing *Valsan Partners Limited Partnership v. Calcor Space Facility, Inc.* (1994) 25 Cal.App.4th 809, 817.)

5

The MOA requires resolving certain matters through the grievance procedure.  (§ 3004.)  Section 3002 defines a "grievance" as "a claim or dispute by an employee, a group of employees, or [the Union] concerning a violation, misinterpretation, or inequitable application of . . . [t]he terms of this Agreement."  The parties agree this definition encompasses the Union's concerns.  They do not agree, however, how to interpret the exclusionary provision that immediately follows.  Section 3003 states:  "MATTERS EXCLUDED FROM THE GRIEVANCE PROCEDURE:  Except as provided in Section 3002, all other matters are specifically excluded from this procedure including, but not limited to, complaints which arise from the following:  [¶¶]  C. Performance review evaluations."  The Union interprets this language as allowing it to bypass the grievance procedure because this dispute centers on the Agency's alleged failure to timely review employee performance.  In contrast, the Agency interprets the phrase "Except as provided in Section 3002" as requiring *any* dispute over the MOA's terms to the procedure regardless of whether performance reviews are at issue.

The Agency's interpretation is more persuasive.  The MOA clearly describes any claim or dispute concerning a violation of its terms as a grievance.  The Union's combined complaint and writ petition alleges the Agency is violating the MOA's terms by not reviewing the performance of its corrections officers.  Such claims must proceed according to the grievance procedure.  The Union must initiate this procedure by submitting a formal written grievance to the appropriate division head; it did not do so here.  (§ 3004(A), (B).)  The trial court used the same reasoning when it granted summary judgment.  It found Breslin's complaints were

6

a "grievance" subject to the procedure's long-expired MOA's 21-day deadline.[6]

The trial court nevertheless found section 3005(A)'s use of the term "may" rather than "shall" meant the grievance procedure was a voluntary option the Union alone could decide to pursue.[7] The court likening it to the one-sided, unconscionable arbitration clauses discussed in *Armendariz v. Foundation Health Services* (2000) 24 Cal.4th 83 and denied the motion to compel on these grounds alone. The court thereafter ignored the threshold question of whether the Union's complaints were subject to the procedure in the first instance.

Section 3004(A) states the Union *shall* submit any grievance to the appropriate division head. Subsequent use of the verb *may* in sections 3004 and 3005 does not render the entire procedure permissive or unilateral. The grievant may or may not decide whether to proceed to the next step of the procedure. If they do, the Agency must participate.[8] The MOA

_____

[6] An employee must complain informally to his supervisor no more than 21 calendar days "from the discovery of the act or omission causing the complaint." (MOA, §3004(A)(1).)

[7] Section 3005(A) states in relevant part: "A grievance unresolved in the steps enumerated above *may* be submitted to arbitration by [the Union] by submitting a letter requesting that the grievance be submitted to arbitration . . . ." (Italics added.)

[8] "Arbitration" under Code of Civil Procedure section 1281.2 means any form of dispute resolution with "a third party decision maker and some decree of impartiality." (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 687.) The grievance procedure culminates in a "final and binding" award by a third-party neutral and thus meets these criteria.

does not resemble the contracts of adhesion encountered in *Armendariz*. The trial's court's focus on the existence of an "agreement to arbitrate" distracted it from the issue of whether the Union's claims constituted grievances under the MOA.

## B. The Agency Did Not Repudiate the Grievance Procedure When It Denied Breslin's Grievance

The Union contends that even if its complaint were subject to the grievance procedure, the Agency repudiated the procedure when Breslin's superiors twice told him the opposite. (See *Farahani v. San Diego Community College Dist.* (2009) 175 Cal.App.4th 1486, 1497, citing *Doster v. County of San Diego* (1988) 203 Cal.App.3d 257, 260-261 ["Plaintiff need not exhaust administrative remedies . . . if the agency has already rejected the claim, announced its position on the claim or made clear it would not consider the plaintiff's evidence"].) These responses might constitute a repudiation if *Breslin's* complaints were at issue. They were not. The *Union's* complaints are the subject of this appeal. Breslin's superiors were responding to one employee's complaint about a performance review given three years prior. Neither response signaled the Agency would take the same position if the Union were to submit a separate grievance addressing broader evaluation practices.[9]

---

[9] The Union cites the pre-lawsuit stipulation signed by the Agency and Breslin as likewise contradicting the Agency's position on appeal. It does not. The stipulation concerns only Breslin's complaints, and, more specifically, the arbitrability of Breslin's February 2019 grievance.

8

*C. The Agency Did Not Waive the Grievance Procedure By Litigating Its Dispute With the Union*

The Union contends the Agency waived the grievance procedure by litigating for more than a year before moving to compel arbitration. It argues the Agency should have immediately moved to compel instead of demurring and serving discovery requests.[10] (See *International Assn. of Bridge, etc. v. Superior Court* (1978) 80 Cal.App.3d 346, 358 [waiver "involves the question of whether petitioner, though its conduct of litigation below, has waived its right to insist upon the real party's compliance with the contractual grievance procedure"].)

There was no waiver. The Agency prefaced its demurrer with a request to "send plaintiffs back to the grievance procedure under the MOA." When the court overruled the demurrer, the Agency filed an answer in which it pleaded failure to exhaust administrative remedies as an affirmative defense. It served a single set of form interrogatories and requests for admission, then moved to compel

nine months after the trial court overruled the demurrer. This was a reasonable timeline considering it also needed to prepare a motion for summary judgment of Breslin's separate claims as well. The procedural path the Agency selected was appropriate.[11] (See, e.g., *Charles J. Rounds Co.*, *supra*, 4 Cal.3d

---

[10] Code of Civil Procedure section 1281.7 permits a defendant to move to compel arbitration in lieu of answering a complaint.

[11] Moving to compel arbitration under section 1281.2 was not the only means the Agency could have used to move its claims into an administrative forum. The Agency could have moved for summary judgment on its exhaustion affirmative defense (*Id.* § 437c); moved for judgment on the pleadings (*Id.* § 438); or

at p. 899 ["[W]here plaintiff has not first pursued or attempted to pursue his arbitration remedy," a defendant "could elect to submit the matter to the jurisdiction of the court" or "may also elect to demur or move for summary judgment on the ground that the plaintiff has failed to exhaust arbitration remedies"].)

## DISPOSITION

The order denying the Agency's motion to compel is reversed. The matter is remanded to the trial court with directions to dismiss the Union's case without prejudice, or, in the alternative, stay the case pending the Union's exhaustion of administrative remedies under the MOA.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:



GILBERT, P.J.



YEGAN, J.

---

requested the court bifurcate trial and decide the defense before the Union's substantive claims.

10

Henry J. Walsh, Judge
Superior Court County of Ventura

_____


Tiffany N. North, County Counsel, and Thomas W. Temple, Assistant County Counsel, for Defendants and Appellants.

Rains Lucia Stern St. Phalle & Silver, Richard A. Levine and Michael A. Morguess, for Plaintiff and Respondent.