114 Cal.Rptr.2d 513 (2001)
94 Cal.App.4th 719
James SWIDERSKI, Plaintiff and Appellant,
v.
MILBERG, WEISS, BERSHAD, HYNES & LERACH, LLP, et al., Defendants and Appellants.
No. D036160.
Court of Appeal, Fourth District, Division One.
December 18, 2001.
Review Granted March 13, 2002.
*517 Burkhardt & Larson, Philip Burkhardt and Carl A. Larson, Rnch Santa Fe, for Plaintiff and Appellant.
Littler Mendelson, Kenneth J. Rose, San Diego, and Michel J. Duquella for Defendants and Appellants.
KREMER, P.J.
Defendants Milberg, Weiss, Bershad, Hynes & Lerach, LLP, William S. Lerach, and Alan Schulman (together Milberg Weiss) appeal an order granting plaintiff James Swiderski's motion for new trial on his complaint for wrongful termination in violation of public policy. As a precaution in the event of reversal of the order granting new trial, Swiderski appeals the underlying summary judgment favoring Milberg Weiss. We reverse the order granting new trial, affirm the summary judgment, and remand the matter to the superior court to entertain proceedings to determine whether Swiderski has retained or waived his right to arbitrate his wrongful termination claim against Milberg Weiss.

I

INTRODUCTION
In December 1996 Swiderski was admitted to practice law in California. In February 1997 Swiderski commenced working for Milberg Weiss as a law clerk and, as a condition of employment, signed an arbitration agreement (the Agreement) covering employment-related disputes. In January 1998, without any break in service, Swiderski began working for Milberg Weiss in a full-time position as an associate attorney.
In April 1999 Milberg Weiss terminated Swiderski's employment assertedly for performance-related reasons. To preserve his rights under the Agreement, Swiderski initiated contractually specified prearbitration procedures. However, stating the Agreement was unenforceable as unconscionable and inapplicable to the portion of his employment as an associate attorney, Swiderski also told Milberg Weiss he intended to sue.
In October 1999 Swiderski filed this lawsuit for wrongful termination in violation of public policy. Answering Swiderski's complaint, Milberg Weiss affirmatively alleged the lawsuit was barred by the Agreement. In December 1999, in response to Swiderski's discovery requests, Milberg Weiss told Swiderski that his civil suit was barred by the Agreement and that he had breached the Agreement by bringing this lawsuit/requesting discovery. Asking Swiderski to honor the Agreement by dismissing *518 this lawsuit, Milberg Weiss also told him that failure to do so would result in a motion for summary judgment under Charles J. Rounds Co. v. Joint Council of Teamsters No. 42 (1971) 4 Cal.3d 888, 95 Cal.Rptr. 53, 484 P.2d 1397 (Rounds ).
In January 2000, not having received any response from Swiderski to its request that he dismiss this lawsuit, Milberg Weiss filed a motion for summary judgment on the ground that all matters raised in the lawsuit were subject to the valid and enforceable Agreement. In March/April 2000 the superior court granted Milberg Weiss's motion for summary judgment. In rejecting Swiderski's assertion that the Agreement applied only to disputes arising from his employment as a law clerk and not to disputes arising from his employment as an associate attorney, the court concluded as a matter of law that the Agreement applied to the parties' entire employment relationship. In rejecting Swiderski's assertion that the Agreement was unenforceable as unconscionable, the court concluded as a matter of law that Swiderski did not present evidence sufficient to raise any triable factual issue on whether the Agreement was procedurally unconscionable.
Later in April 2000, Swiderski forwarded to the American Arbitration Association (AAA) a demand for arbitration[1] and a declaration of hardship for purposes of seeking relief from arbitration expenses. The AAA deferred one-half ($250) of certain administrative fees but did not agree to waive any of the arbitrator's compensation.
In May 2000 the court entered summary judgment favoring Milberg Weiss on the ground there was no triable factual issue on whether Swiderski's single cause of action was covered by the valid and enforceable Agreement.
In June 2000 Swiderski filed notice of intention to move for new trial on the ground of newly discovered evidence.[2] (Code Civ. Proc., § 657, subd. 4.)[3] Swiderski's points and authorities supporting his new trial motion identified such assertedly newly discovered evidence as the AAA's refusal to provide him with an economically viable forum. Swiderski's notice of intention also stated a new trial would be sought on the grounds that the decision was against law (§ 657, subd. 6) and that at the summary judgment proceedings an error in law had occurred that was excepted to by Swiderski (id., subd. 7). With respect to those latter two grounds, Swiderski's points and authorities asserted that triable factual issues existed on whether the Agreement applied to the parties' entire employment relationship and on whether the Agreement was effectively unilateral and thus substantively unconscionable.[4]
*519 In July 2000 the court granted Swiderski's motion for new trial. As Swiderski expressly acknowledges, the court's new trial order was based upon a reason never asserted by Swiderski. Specifically, characterizing Milberg Weiss's summary judgment motion as based on the ground that its employment agreement with Swiderski contained an arbitration provision, the court concluded there was evidence sufficient to establish that Swiderski "pursued or attempted to pursue his arbitration remedy" before filing this lawsuit.
Milberg Weiss appeals the order granting Swiderski's motion for new trial. In reversing the new trial order, we conclude such order was based upon the court's erroneous concept of applicable legal principles. We also conclude the order was not otherwise sustainable upon any ground stated in Swiderski's motion for new trial.
Swiderski appeals the underlying summary judgment. In affirming the summary judgment, we conclude as a matter of law that the Agreement encompassed the entirety of the parties' employment relationship and was not unconscionable.
Finally, we remand the matter to the superior court to entertain proceedings to determine the issue whether Swiderski has retained or waived his arbitration rights.

II

DISCUSSION

A

Standard of Review
Like any order granting a new trial, an order granting new trial following an order granting summary judgment is appealable. (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at pp. 858-859, 107 Cal.Rptr.2d 841, 24 P.3d 493; see Waschek v. Department of Motor Vehicles (1997) 59 Cal.App.4th 640, 643-644, fn. 4, 69 Cal. Rptr.2d 296; Malo v. Willis (1981) 126 Cal.App.3d 543, 546, fn. 2, 178 Cal.Rptr. 774.) To the extent Swiderski's motion for new trial was granted because the superior court believed it had misapplied the law in granting Milberg Weiss's motion for summary judgment, the independent appellate review standard applies and the issue on appeal with respect to the new trial order is whether the summary judgment was properly granted or should have been denied. (Aguilar, at pp. 859-860, 107 Cal. Rptr.2d 841, 24 P.3d 493; Green v. Del-Camp Investments, Inc., supra, 193 Cal. App.2d at pp. 482-483, 14 Cal.Rptr. 420 [since defendant had adequately shown there was no triable factual issue, "the motion for summary judgment was properly granted and the motion for new trial should have been denied"]; Malo, at pp. 546, 549, 178 Cal.Rptr. 774.) With respect to whether a new trial should have been granted on the ground of assertedly newly discovered evidence, the standard of review on appeal is abuse of discretion. (Aguilar, at p. 859, 107 Cal.Rptr.2d 841, 24 P.3d 493; Scott v. Farrar, supra, 139 Cal. App.3d at pp. 468-69, 188 Cal.Rptr. 823.)

B

The Superior Court's Legally Erroneous Rationale for Ordering New Trial
The court's order granting Swiderski's motion for new trial did not specify the statutory "ground" upon which it was granted. (§ 657.) Instead, the order was based simply on the "reason," never asserted *520 by Swiderski, that the record on the summary judgment motion purportedly contained evidence sufficient to establish that Swiderski "pursued or attempted to pursue his arbitration remedy" before filing this lawsuit. Milberg Weiss contends the court erred in granting a new trial on a "ground" assertedly not specified by Swiderski. (Wagner v. Singleton (1982) 133 Cal.App.3d 69, 72, 183 Cal.Rptr. 631 ["the motion for new trial can only be granted on a ground specified in the notice of intention to move for a new trial"].) However, where, as here, "`a trial court in granting a new trial based its order exclusively upon an erroneous concept of legal principles applicable to the cause, its order will be reversed [citation].'" (Neal v. Montgomery Elevator Co. (1992) 7 Cal. App.4th 1194, 1199-1200, 9 Cal.Rptr.2d 497.) Thus, regardless whether the court could properly order a new trial based on a "reason" never asserted by Swiderski, we conclude the order must be reversed as based upon the court's erroneous interpretation of the controlling legal principles set forth in Rounds, supra, 4 Cal.3d 888, 95 Cal.Rptr. 53, 484 P.2d 1397.[5] Specifically, in Rounds the Supreme Court held that summary judgment for defendants may properly be granted where, as here, the plaintiff has failed to exhaust or attempt to exhaust his arbitration remedy before filing his lawsuit on a claim covered by an arbitration agreement. In granting Swiderski's motion for new trial, the superior court erroneously concluded that Swiderski's mere initiation of the contractually imposed prearbitration procedures, without more, satisfied the requirements of Rounds.
In Rounds, supra, 4 Cal.3d 888, 95 Cal. Rptr. 53, 484 P.2d 1397, an employer sued a union for allegedly breaching a collective bargaining agreement. The Supreme Court affirmed a judgment dismissing the employer's complaint on the grounds that the dispute constituting the subject of the lawsuit was covered by an arbitration clause in such agreement. In a lengthy discussion of California law, the Supreme Court noted: "Our courts for many years have held that, in the absence of waiver by the other party, an aggrieved party must seek to enforce his contractual right to arbitration before suing for breach of contract. `"[S]uch arbitration, or an unsuccessful attempt to secure the same, is a condition precedent" to the right to maintain an action for breach of the contract[.]'" (Id, at p. 894, 95 Cal.Rptr. 53, 484 P.2d 1397.) The Supreme Court also noted case law analogizing contractual arbitration to "an administrative remedy that must be exhausted before seeking judicial relief." (Ibid.) Further, the Supreme Court observed: "Several of our Courts of Appeal have adopted this reasoning, giving summary judgment to defendants or dismissing plaintiffs cause of action where failure to pursue a contractual arbitration remedy is proved as an affirmative defense. In none of these cases, it may be added, did defendant demand arbitration, but rather raised failure of plaintiff to arbitrate as a defense to the cause of action. [Citations.] [¶] In each of the above-entitled cases, the fact situation was similar to the one at bar: Plaintiff had *521 sued on the contract rather than arbitrate and had never sought to pursue its arbitration remedy. Moreover, each and every issue alleged in plaintiffs cause of action could have been settled through arbitration procedures.[6] Finally, defendant did not waive its right to arbitration, but consistently asserted failure to pursue arbitration as an affirmative defense." (Id. at pp. 894-895, 95 Cal.Rptr. 53, 484 P.2d 1397.)
Near the conclusion of its opinion in Rounds, supra, 4 Cal.3d 888, 95 Cal.Rptr. 53, 484 P.2d 1397, the Supreme Court discussed the "distinctions implicit in the decisions" it had reviewed and that "should be followed." (Id. at p. 899, 95 Cal.Rptr. 53, 484 P.2d 1397.) The Supreme Court stated: "Specifically, where the only issue litigated is covered by the arbitration clause, and where plaintiff has not first pursued or attempted to pursue his arbitration remedy, it should be held that (1) plaintiff has impliedly waived his right to arbitrate, such that defendant could elect to submit the matter to the jurisdiction of the court; (2) defendant may also elect to demur or move for summary judgment on the ground that the plaintiff has failed to exhaust arbitration remedies; and (3) defendant may also elect to move for a stay of proceedings pending arbitration if defendant also moves to compel arbitration. Plaintiff may of course sue preliminarily to enforce its arbitration rights." (Ibid., italics added.) In granting Swiderski's new trial motion, the superior court cited the italicized language from Rounds. However, as noted, the next clause of such passage expressly permitted Milberg Weiss to move for summary judgment on the ground that Swiderski "failed to exhaust arbitration remedies." (Ibid.) Further, the next paragraph in Rounds stated: "Where plaintiff has attempted to exhaust its arbitration remedy or raises issues not susceptible to arbitration or not covered by the arbitration agreement, defendant may not merely assert failure to arbitrate an issue as an affirmative defense; a stay rather than dismissal of the suit is then proper. Defendant must therefore demand arbitration if it seeks such a stay." (Ibid., italics added.) Manifestly, when read in context and in light of the Supreme Court's lengthy analysis in Rounds, the language relied upon by the superior court may not reasonably be construed as setting a standard less than exhaustion or attempted exhaustion of arbitration remedies as the legal threshold for permitting Swiderski to file this lawsuit. (Cf. Wilkinson v. Norcal Mutual Ins. Co. (1979) 98 Cal.App.3d 307, 313-314, 159 Cal.Rptr. 416 ["the exhaustion of administrative remedies `requires not merely the initiation of prescribed administrative procedures; it requires pursuing them to their appropriate conclusion and awaiting their final outcome before seeking judicial intervention'"].)
Further, where, as here, the facts are undisputed, the issue whether a party has exhausted or attempted to exhaust his arbitration remedies is a question of law properly resolved in a motion for summary judgment. (Cf. Wilkinson v. Norcal Mutual Ins. Co., supra, 98 Cal.App.3d at pp. 317-318, 159 Cal.Rptr. 416.) The undisputed evidence in this record established as a matter of law that Swiderski did not exhaust or attempt to exhaust his arbitration remedy. (Rounds, supra, 4 Cal.3d at p. 899, 95 Cal.Rptr. 53, 484 P.2d 1397; Martinez v. Scott Specialty Gases, Inc. (2000) 83 Cal.App.4th 1236, 1240, 1242-1243, 1250-1251, 100 Cal.Rptr.2d 403; 2k Hour Fitness, Inc. v. Superior Court *522 (1998) 66 Cal.App.4th 1199, 1207-1208, 78 Cal.Rptr.2d 533.) Indeed, similar to the plaintiff in Rounds, at no time before entry of summary judgment did Swiderski attempt to initiate formal arbitration proceedings. (Id. at p. 899, 95 Cal.Rptr. 53, 484 P.2d 1397.)
Specifically, undisputed evidence showed: In May 1999 Swiderski sent two letters to Milberg Weiss's administrator, the first advising that Swiderski was submitting an "arbitration demand" about his wrongful termination claim solely for the purpose of preserving his right to arbitrate, and the second providing detailed facts of such wrongful termination claim as required by the Agreement; although indicating they were intended to preserve his right to arbitrate, Swiderski's letters to Milberg Weiss's administrator also stated that he intended to litigate his claim in court; in June 1999, in compliance with step one of the Agreement's prearbitration procedures, Swiderski and counsel met with Milberg Weiss's administrator and counsel to discuss Swiderski's wrongful termination claim; later that month, the administrator informed Swiderski in writing that that no wrongdoing was found to have occurred on Milberg Weiss's part with respect to termination of his employment; a few days later, "in an effort to comply in good faith with Step 2 of the purported pre-arbitration procedures," Swiderski sent Milberg Weiss a letter disagreeing with the administrator's decision and also requesting certain documents in Milberg Weiss's exclusive control; in July 1999 Milberg Weiss notified Swiderski that it accepted his letter as a timely request to proceed to step two of the prearbitration procedures; however, Milberg Weiss refused to provide Swiderski with any of the requested documents unless he entered into a stipulation of confidentiality drafted by Milberg Weiss; Swiderski refused to sign the stipulation of confidentiality presented by Milberg Weiss but instead proposed changes; the parties were unable to reach agreement about the proposed changes to the stipulation of confidentiality; in September 1999 Milberg Weiss inquired whether Swiderski intended to proceed to step two of the Agreement's prearbitration procedures; and in October 1999, instead of responding to Milberg Weiss's inquiry or proceeding toward arbitration, Swiderski filed this lawsuit.
In sum, undisputed evidence showed that before summary judgment, Swiderski did not exhaust or attempt to exhaust his arbitration remedy. After Milberg Weiss terminated his employment, Swiderski initiated the Agreement's prearbitration procedures. However, Swiderski repeatedly stated that he believed the Agreement was unenforceable and that he intended to litigate his claim in court. Eventually, Swiderski discontinued those prearbitration procedures and, before filing this lawsuit, never initiated or attempted to initiate an arbitration proceeding. Indeed, not until after the court in this lawsuit granted summary judgment favoring Milberg Weiss did Swiderski file his "protective" demand for arbitration.
Thus, to the extent the court's "reason" for ordering a new trial was encompassed under section 657, subdivision 6, the court erred in effectively concluding its grant of summary judgment was against law. Instead, the summary judgment was required by law due to Swiderski's failure to exhaust or attempt to exhaust his arbitration remedies. (Rounds, supra, 4 Cal.3d at pp. 894-895, 899, 95 Cal.Rptr. 53, 484 P.2d 1397; Wilkinson v. Norcal Mutual Ins. Co., supra, 98 Cal.App.3d at pp. 314, 317-318, 159 Cal.Rptr. 416; Martinez v. Scott Specialty Gases, Inc., supra, 83 Cal. App.4th at p. 1251, 100 Cal.Rptr.2d 403; 2k Hour Fitness, Inc. v. Superior Court, *523 supra, 66 Cal.App.4th at p. 1216, 78 Cal. Rptr.2d 533.)
Undaunted, Swiderski contends the record contained evidence raising a triable issue of material fact on whether he complied with the Agreement and Milberg Weiss did not. More particularly, Swiderski contends the evidence submitted on the summary judgment motion established that his filing this lawsuit was proper because during the prearbitration procedures, Milberg Weiss assertedly refused to adhere to the time frame of step two of such procedures and refused to provide him with documents assertedly necessary to substantiate his wrongful termination claim unless he stipulated to confidentiality. However, Swiderski's contentions that Milberg Weiss breached the Agreement before Swiderski justifiably discontinued the prearbitration procedures under such Agreement are belied by the undisputed evidence and the Agreement's language.
Contrary to Swiderski's contention that Milberg Weiss breached the Agreement by not adhering to its time frame for completing step two of the prearbitration procedures, the Agreement expressly provided that if during step two Swiderski did not receive a written reply from Milberg Weiss's management committee on time, he could simply submit his claim for final and binding arbitration. However, instead of proceeding to arbitration, Swiderski filed this lawsuit. Similarly without merit is Swiderski's contention that Milberg Weiss breached the Agreement by precluding him from pursuing arbitration through its refusal to provide requested documents before commencement of the arbitration unless he entered into a stipulation of confidentiality. Although providing for discovery to the full extent permitted by section 1283.05 after selection of an arbitrator, the Agreement did not contain anything entitling Swiderski to any discovery before initiation of arbitration proceedings.
In sum, the new trial order must be reversed to the extent based upon the superior court's erroneous interpretation of applicable legal principles set forth in Rounds, supra, 4 Cal.3d 888, 95 Cal.Rptr. 53, 484 P.2d 1397. (Neal v. Montgomery Elevator Co., supra, 7 Cal.App.4th at pp. 1199-1200, 9 Cal.Rptr.2d 497.)

C

New Trial Order Not Sustainable on Grounds Stated in Swiderski's Motion
Swiderski contends it is of "no consequence" whether the superior court's stated reason for the new trial order was legally correct because such order is assertedly otherwise sustainable on each of the three grounds stated in his notice of intention to move for new trial. Along those lines, since Swiderski's new trial motion was not based upon the grounds of insufficiency of the evidence or excessive/inadequate damages, the order granting new trial must be affirmed on appeal "if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons." (§ 657; Sanchez-Corea v. Bank of America (1985) 38 Cal.3d 892, 905, 215 Cal.Rptr. 679, 701 P.2d 826.) However, as we shall explain, the new trial order is not sustainable on any ground stated in Swiderski's motion.

1

New trial not warranted on ground of newly discovered evidence
As noted, Swiderski's notice of intention to move for new trial specified the ground of newly discovered evidence (§ 657, subd. 4 ["Newly discovered evidence, material for the party making the *524 application, which he could not, with reasonable diligence, have discovered and produced at the trial"].) Swiderski's points and authorities supporting his new trial motion identified such assertedly newly discovered evidence as the AAA's refusal to provide him with an economically viable forum. However, the new trial order was not warranted on the ground of newly discovered evidence.
In April 2000, after the court granted summary judgment favoring Milberg Weiss, Swiderski forwarded to the AAA a "protective" demand for arbitration and a declaration of hardship for purposes of seeking relief from arbitration expenses. In May 2000 the AAA deferred one-half ($250) of certain administrative fees but did not agree to waive any of the arbitrator's compensation. Asserting he was required under the Agreement and the AAA's rules to bear arbitration fees at rates out of his reach, Swiderski contends the AAA's refusal to waive the arbitrator's fees rendered the Agreement unenforceable by denying him an economically viable forum and effectively leaving him without a remedy.[7] Swiderski thus concludes that the new trial order should be affirmed on the ground of newly discovered evidence because he did not learn until the end of May 2000 of the AAA's denying his request for waiver of arbitrator's compensation.
However, Swiderski made no evidentiary showing that with reasonable diligence he could not have discovered and produced before the summary judgment proceedings the evidence of the asserted lack of an economically viable arbitration forum. In particular, Swiderski presented no evidence explaining why he did not act before the summary judgment proceedings to learn about the AAA's fees and its policies involving hardship assistance or waiver of such fees. (Fomco, Inc. v. Joe Maggio, Inc. (1961) 55 Cal.2d 162, 165-166, 10 Cal. Rptr. 462, 358 P.2d 918; Slemons v. Paterson (1939) 14 Cal.2d 612, 615-616, 96 P.2d 125.)[8]
Moreover, Swiderski's contentions about the expected costs of arbitration are speculation devoid of evidentiary support showing the costs of an AAA arbitrator or the price range of available arbitrators generally. (See Green Tree Financial Corp.Ala. v. Randolph (2000) 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 [where "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs"].) Instead, Swiderski's declaration simply asserted without factual basis that he expected the *525 arbitrator's fees would cost him about $6,000. Similarly, Swiderski's counsel's declaration simply asserted that in his experience in dealing with arbitration tribunals, the portion of arbitration costs attributable to the arbitrator's compensation was between $200 and $300 per hour in San Diego County. Milberg Weiss objected to those declarations in the superior court. Such speculation was not admissible evidence, provided no basis for ascertaining the actual costs and fees for which Swiderski would be liable in arbitration, did not provide grounds to find the Agreement unenforceable, and thus did not support the granting of a new trial. (Ibid.)
In sum, the new trial order may not be sustained under section 657, subdivision 4.

2.

New trial order not warranted on grounds of decision "against law" or "error in law"
Swiderski's notice of intention to move for new trial also specified the grounds that the summary judgment was "against law" (§ 657, subd. 6) and that there was an "[e]rror in law, occurring at the trial and excepted to by the party making the application" (id., subd. 7). With respect to those two grounds, Swiderski's points and authorities specifically asserted a triable factual issue existed on whether the Agreement applied to the parties' entire employment relationship and on whether Swiderski's obligation to submit his claim to arbitration was substantively unconscionable as effectively unilateral.
The specified ground for new trial that the decision is "against law" under section 657, subdivision 6 "is separate and distinct from the other grounds listed in section 657 and does not include any, or all, of those other separate and distinct grounds for new trial." (Sanchez-Corea v. Bank of America, supra, 38 Cal.3d at p. 906, 215 Cal.Rptr. 679, 701 P.2d 826.) In effect, the summary judgment favoring Milberg Weiss may be said to be "against law" only if based upon a legally insufficient evidentiary presentation. (Cf. Musgrove v. Ambrose Properties (1978) 87 Cal. App.3d 44, 56,150 Cal.Rptr. 722; McCown v. Spencer (1970) 8 Cal.App.3d 216, 229, 87 Cal.Rptr. 213.) When the ground for a new trial motion is section 657, subdivision 7, the superior court has "no discretion to grant a new trial unless its original ruling, as a matter of law, was erroneous." (Ramirez v. USAA Casualty Ins. Co. (1991) 234 Cal.App.3d 391, 397, 285 Cal.Rptr. 757.) However, the summary judgment favoring Milberg Weiss was not against law or the product of legal error. (§ 657, subds. 6 & 7.) Instead, undisputed evidence compelled summary judgment under applicable law. Specifically, in granting summary judgment on this record devoid of evidentiary conflict, the superior court properly concluded that as a matter of law the Agreement applied to the parties' entire employment relationship and was not unconscionable. For that reason, as we shall explain, the order granting new trial must be reversed and the summary judgment affirmed. (Aguilar v. Atlantic Richfield Co., supra, 25 Cal.4th at pp. 859-860, 107 Cal.Rptr.2d 841, 24 P.3d 493; Green v. Del-Camp Investments, Inc., supra, 193 Cal.App.2d at pp. 482-483, 14 Cal.Rptr. 420.)

(a)

Agreement Applied to Entirety of Parties' Employment Relationship
Asserting the Agreement referred to an "employment relationship" without specifying the employment relationship to which it related, Swiderski contends the superior court erred in granting summary *526 judgment favoring Milberg Weiss because the record purportedly contained evidence raising a triable factual issue on whether the Agreement applied to his entire employment relationship with Milberg Weiss, including his employment as an attorney commencing January 1998, or only to his employment relationship with Milberg Weiss in his temporary position as law clerk, which commenced when he signed the Agreement in February 1997. We conclude the court properly concluded the Agreement applied to the entirety of the parties' employment relationship.
"Arbitration is favored in this state as a voluntary means of resolving disputes...." (Armendariz, supra, 24 Cal.4th at p. 115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) "By indulging in every intendment to give effect to arbitration proceedings, courts advance the goal of the peaceful resolution of employment disputes. [Citation.] As a general rule, `[i]f there is doubt as to whether an arbitration provision in an agreement covers a given controversy, it should be resolved in favor of coverage. [Citations.]'" (United Fire-fighters of Los Angeles v. City of Los Angeles (1991) 231 Cal.App.3d 1576, 1583, 283 Cal.Rptr. 8; Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9, 10 Cal.Rptr.2d 183, 832 P.2d 899 ["courts will `"indulge every intendment to give effect to [arbitration] proceedings"'"].)
After reciting that "Employee [Swiderski] is commencing or has previously commenced an at-will employment relationship with the Firm [Milberg Weiss]," the Agreement provided: "Any claim arising out of or relating to Employee's employment relationship with the Firm, or its termination, including any claim against any of the persons or entities referred to in Section 3, and any agreements previously or hereafter entered into between Employee and the Firm in connection with such employment relationship, shall be settled by final and binding arbitration in accordance with Title 9 of the California Code of Civil Procedure section 1280, et. seq., and the then current Employment Dispute Resolution Rules (the `Rules') of the American Arbitration Association (`AAA') to the extent that such rules do not conflict with any provision of this Agreement." (Italics added.) The Agreement also provided: "This Agreement contains the complete and exclusive agreement between the Parties concerning the subject matter of this Agreement, and supersedes all other agreements and understandings."
In granting summary judgment, the superior court stated that as a matter of law the Agreement clearly and unambiguously applied to the parties' entire employment relationship. The court also stated that it considered extrinsic evidence surrounding the execution of the Agreement as presented by the parties through Swiderski's declaration and the declarations of Milberg Weiss's administrator. Finally, the court determined as a matter of law that the Agreement was intended by the parties as a final, complete and exclusive statement of their agreement.
"Under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation. (Civ.Code, § 1636.) Such intent is to be inferred, if possible, solely from the written provisions of the contract. (Id., § 1639.) The `clear and explicit' meaning of these provisions, interpreted in their `ordinary and popular sense,' unless `used by the parties in a technical sense or a special meaning is given to them by usage' (id., § 1644), controls judicial interpretation. (Id., § 1638.)" (AIU Ins. Co. v. Superior Court (1990) 51 Cal.3d 807, 821-822, 274 Cal. Rptr. 820, 799 P.2d 1253.) The "`overriding *527 goal of interpretation is to give effect to the parties' mutual intentions as of the time of contracting.... Where contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further.'" (Shaw v. Regents of University of California (1997) 58 Cal.App.4th 44, 53, 67 Cal.Rptr.2d 850 (Shaw).) "Although the intent of the parties determines the meaning of the contract (Civ.Code, §§ 1636, 1638), the relevant intent is `objective'that is, the objective intent as evidenced by the words of the instrument, not a party's subjective intent." (Id. at pp. 54-55, 67 Cal.Rptr.2d 850.) Further, although "parol evidence may be admitted to explain the meaning of a writing when the meaning urged is one to which the written contract term is reasonably susceptible or when the contract is ambiguous[, p]arol evidence cannot be admitted to show intention independent of an unambiguous document." (Hayter Trucking, Inc. v. Shell Western E & P, Inc. (1993) 18 Cal.App.4th 1,15, 22 Cal.Rptr.2d 229.)
"The interpretation of a written instrument, even though it involves what might properly be called questions of fact [citation], is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect. [Citations.] Extrinsic evidence is `admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible' [citations], and it is the instrument itself that must be given effect. [Citations.] It is therefore solely a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence." (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865, 44 Cal.Rptr. 767, 402 P.2d 839 (Parsons), cited in Shaw, supra, 58 Cal.App.4th at p. 52, 67 Cal.Rptr.2d 850 ["where the interpretation of written instrument does not turn on the credibility of extrinsic evidence, it poses a pure question of law"].)
In Parsons, the Supreme Court "specifically took issue with a line of cases which had held that a trial court's interpretation of a contract was binding whenever `"conflicting inferences may be drawn" from extrinsic evidence.' [Citations.] [The opinion in Parsons ] explained `it is only when conflicting inferences arise from conflicting evidence, not from uncontroverted evidence, that the trial court's resolution is binding. "The very possibility of ... conflicting inferences, actually conflicting interpretations, far from relieving the appellate court of the responsibility of interpretation, signalizes the necessity of its assuming that responsibility." `[Citations.] The rule thus emerges that it is only when the foundational extrinsic evidence is in conflict that the appellate court gives weight to anything other than its de novo interpretation of the parties' agreement." (Medical Operations Management, Inc. v. National Health Laboratories, Inc. (1986) 176 Cal.App.3d 886, 891, 222 Cal.Rptr. 455 (Medical Operations Management).) In sum, interpretation of a written instrument that does not turn upon the credibility of extrinsic evidence is solely a judicial function even where, as here, it involves resolution between conflicting inferences that can be drawn from the undisputed evidence. (Parsons, supra, 62 Cal.2d at p. 865, 44 Cal.Rptr. 767, 402 P.2d 839; Medical Operations Management, at p. 891, 222 Cal. Rptr. 455.)
Here, as in Medical Operations Management, supra, 176 Cal.App.3d 886, 222 Cal.Rptr. 455, the superior court admitted extrinsic evidence to aid in the interpretation of the Agreement's term "employment relationship." (Id. at p. 891, 222 Cal.Rptr. *528 455; cf. Esbensen v. Userware Internal., Inc. (1992) 11 Cal.App.4th 631, 636-637, 14 Cal.Rptr.2d 93 ["To the extent a contract is integrated, the parol evidence rule precludes the admission of evidence of the parties' prior or contemporaneous oral statements to contradict the terms of the writing, although parol evidence is always admissible to interpret the written agreement"].) Such evidence "presented the context" in which the Agreement "arose and described the conduct of the parties after the execution of the contract which cast light on their original intent." (Medical Operations Management, at pp. 891-892, 222 Cal.Rptr. 455.) However, here, as in Medical Operations Management, "although the parties hotly dispute the inferences to be drawn from this extrinsic evidence, the evidentiary facts themselves are not in conflict. Thus, Parsons requires that we review the Agreement in the context of the extrinsic evidence presented and make our own independent determination of the meaning" of the Agreement's term "employment relationship." (Id. at p. 892, 222 Cal.Rptr. 455, fn. omitted.)[9]
In the summary judgment proceedings, the evidence bearing on the meaning of the Agreement's term "employment relationship" was undisputed. In January 1997 Swiderski wrote Milberg Weiss a letter stating he was "interested in a law clerk position" with Milberg Weiss. Later that month during an interview about the law clerk position, Milberg Weiss told Swiderski that the law clerk position was temporary and would last only until May 1997. A few days later, Milberg Weiss sent Swiderski a letter offering him a law clerk position. Milberg Weiss's letter informed Swiderski that the offered position "was not intended as permanent," was expected to last only from February through May 1997, and was "not a prelude to a permanent position." The letter also informed Swiderski he would receive a $20 hourly *529 wage as a law clerk. Swiderski accepted the law clerk position with Milberg Weiss.
On February 3, 1997, Swiderski began working at Milberg Weiss; participated in an administrative orientation process for new employees, including a tour of the office and introduction to staff; and was instructed on use of office equipment and safety procedures. Swiderski also received and signed documents related to Milberg Weiss's policies and procedures involving sexual harassment and building safety, as well as other employment-related documents, including Milberg Weiss's "At-Will Policy." Further, Swiderski signed the Agreement after having only a few minutes to review such Agreement. Milberg Weiss required all its employees to sign an arbitration agreement like Swiderski's as a condition of employment. At the time he signed the Agreement, Swiderski did not object to the Agreement, did not comment about the Agreement, and did not indicate he was signing the Agreement under protest or that the Agreement was an unacceptable condition of employment. No one at Milberg Weiss ever discussed with Swiderski the terms and significance of the Agreement. During the orientation process, Milberg Weiss verbally confirmed Swiderski's understanding that the law clerk position would last only through May 1997 and gave him a law clerk employee data sheet containing a hire date of February 3, 1997, and a termination date of May 31, 1997. In sum, Swiderski was informed multiple times that the law clerk position was temporary, would only last through May 1997 and would not lead to a full-time position.
However, as it turned out, Swiderski's employment with Milberg Weiss continued uninterrupted until his discharge in April 1999. Specifically, Swiderski continued working for Milberg Weiss as a law clerk beyond May 1997. Then, in December 1997 Milberg Weiss offered Swiderski a full-time position as an associate attorney. In early January 1998 Swiderski accepted the associate attorney position and began working for Milberg Weiss in that position retroactively to January 1, 1998. As an associate attorney, Swiderski received a starting salary of $70,000 per year and employee benefits, including life insurance, medical insurance and the right to participate in Milberg Weiss's 401(k) plan. Later in January 1998, Swiderski was required to participate again in the administrative orientation process for new hires and was provided with much of the same information he had received during his first orientation process. Swiderski signed various employment-related documents identical to those he had signed during his orientation as a law clerk and other documents of a type he had not previously signed, including those related to life insurance and medical insurance, benefits he was not afforded as a law clerk. Milberg Weiss also gave Swiderski a lawyer employee data sheet indicating a hire date of January 1, 1998. However, at no time during that second orientation process or in contemplation of, or during, his employment as an associate attorney did Swiderski ever sign an agreement to arbitrate disputes related to that position. Further, Swiderski never engaged in any discussion with Milberg Weiss about arbitrating those disputes and never reaffirmed the Agreement for application to such disputes.
Swiderski contends such evidence supported his interpretation that the Agreement was not intended to apply to a subsequent employment relationship as an attorney. Specifically, Swiderski contends the fact the Agreement was executed in connection with his employment as a law clerk, when he was told orally and in writing that he should not expect any employment *530 beyond such status, was sufficient to raise a triable factual issue bearing on interpretation of the Agreement.[10] In support of his urged interpretation of the Agreement, Swiderski also cites the evidence that he underwent a second orientation process that did not result in the execution of a second arbitration agreement.[11] Further, Swiderski points to the documents showing a law clerk hire date of February 3, 1997, and other documents showing a lawyer hire date of January 1, 1998. Asserting such evidence raised an inference that the Agreement was not intended to apply to his employment as an associate attorney, Swiderski concludes the superior court should have denied Milberg Weiss's motion for summary judgment. However, even if the Agreement were deemed as potentially susceptible to the meaning urged by Swiderski, on the undisputed evidence in this record the only reasonable inference is that the Agreement applied to the entirety of the parties' employment relationship. (Hayter Trucking, Inc. v. Shell Western E & P, Inc., supra, 18 Cal.App.4th at p. 15, 22 Cal. Rptr.2d 229; cf. Armendariz, supra, 24 Cal.4th at p. 104, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
In sum, the Agreement expressly provided it covered all claims arising out of or relating to Swiderski's employment with Milberg Weiss, its termination, or any agreements previously or "hereafter" entered into between the parties in connection with such "employment relationship." The plain and ordinary meanings of the terms "employment relationship" and "hereafter" made clear that the scope of the Agreement encompassed Swiderski's employment with Milberg Weiss in any position. (AIU Ins. Co. v. Superior Court, supra, 51 Cal.3d at pp. 821-822, 274 Cal. Rptr. 820, 799 P.2d 1253; Shaw, supra, 58 Cal.App.4th at p. 53, 67 Cal.Rptr.2d 850.) Further, although in deciding Milberg Weiss's summary judgment motion the superior court expressly considered "extrinsic evidence surrounding the execution of the agreement as presented by the parties," such evidence did not support the meaning of "employment relationship" urged by Swiderski. In particular, nothing in that extrinsic evidence suggested the existence of any collateral agreement between the parties limiting the scope of the Agreement to Swiderski's employment as a law clerk. Hence, the court could properly reject such extrinsic evidence as not relevant to prove a meaning to which the language of the Agreement was reasonably susceptible. (Hayter Trucking, Inc. v. Shell Western E & P, Inc., supra, 18 Cal.App.4th at p. 15, 22 Cal.Rptr.2d 229; Fireman's Fund Ins. Co. v. Fibreboard Corp. (1986) 182 Cal.App.3d 462, 468, 227 Cal.Rptr. 203 ["the test of admissibility of such explanatory extrinsic evidence is "whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible'"].) Moreover, since there was no conflicting evidence or any dispute about the credibility of the extrinsic evidence but only about how such evidence affected interpretation of the Agreement, there was no triable factual issue remaining. (Parsons, supra, 62 Cal.2d at p. 865, *531 44 Cal.Rptr. 767, 402 P.2d 839; Medical Operations Management, supra, 176 Cal. App.3d at p. 891, 222 Cal.Rptr. 455.) Accordingly, the court properly concluded as a matter of law that the Agreement covered Swiderski's present claim arising out of his employment with Milberg Weiss as an associate attorney.

(b)

Agreement Was Not Unconscionable
Swiderski contends that even if the Agreement applied to his employment as an attorney, the superior court should have denied Milberg Weiss's motion for summary judgment because the Agreement was assertedly unconscionable and thus unenforceable. Swiderski relies primarily on Armendariz, supra, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, a case decided after the summary judgment and new trial order here. However, on this record we conclude the Agreement was not unconscionable.
"[U]nder both federal and California law, arbitration agreements are valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [Citations.] In other words, under California law, as under federal law, an arbitration agreement may only be invalidated for the same reasons as other contracts." (Armendariz, supra, 24 Cal.4th at p. 98, 99 Cal.Rptr.2d 745, 6 P.3d 669, fn. omitted.) "Because unconscionability is a reason for refusing to enforce contracts generally, it is also a valid reason for refusing to enforce an arbitration agreement under" section 1281 and under the Federal Arbitration Act. (Armendariz, at p. 114, 99 Cal. Rptr.2d 745, 6 P.3d 669.)
"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] `The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether `other factors are present which, under established legal ruleslegislative or judicialoperate to render it [unenforceable].' [Citation.] `Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [Citations.] The seconda principle of equity applicable to all contracts generallyis that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable."' [Citation.] Subsequent cases have referred to both the `reasonable expectations' and the `oppressive' limitations as being aspects of unconscionability." (Armendariz, supra, 24 Cal.4th at p. 113, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
In Armendariz, supra, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, the Supreme Court stated there was "little dispute" that the arbitration agreement there was adhesive since it "was imposed on employees as a condition of employment and there was no opportunity to negotiate." (Id. at pp. 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) The Supreme Court observed that "in the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to *532 refuse a job because of an arbitration requirement." (Id, at p. 115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Here, the declaration of Milberg Weiss's administrator stated Milberg Weiss required all its employees to sign an arbitration agreement like the Agreement signed by Swiderski as a condition of their employment.[12] However, as the superior court noted, Swiderski presented no evidence that employment opportunities were scarce at the time he signed the Agreement. Indeed, unlike the typical situation of concern to the Supreme Court in Armendariz, this evidentiary record suggested Swiderski could have refused the job with Milberg Weiss because of the arbitration requirement. (24 Cal.4th at p. 115, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Specifically, Swiderski's declaration indicated that in initially telling Milberg Weiss he was interested in the law clerk position, Swiderski also stated he was currently employed as a law clerk at another law firm where he had been offered a job as a full-time associate attorney. However, even if the Agreement were deemed to be adhesive, Swiderski has failed to establish it was unconscionable.
"`[U]nconscionability has both a "procedural" and a "substantive" element,' the former focusing on `"oppression"' or `"surprise"' due to unequal bargaining power, the latter on `"overly harsh"' or `"one-sided"' results. [Citation.] `The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. `Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (Armendariz, supra, 24 Cal.4th at p. 114, 99 Cal.Rptr.2d 745, 6 P.3d 669; 2h Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at pp. 1212-1213, 78 Cal.Rptr.2d 533 ["unconscionability has both a procedural and a substantive element, both of which must be present to render a contract unenforceable"].)
"Unconscionability is ultimately a question of law for the court." (American Software, Inc. v. Ali (1996) 46 Cal.App.4th 1386, 1391, 54 Cal.Rptr.2d 477.) Swiderski contends the superior court erred in not recognizing the inherent relationship between procedural unconscionability and substantive unconscionability. (Armendariz, supra, 24 Cal.4th at p. 114, 99 Cal. Rptr.2d 745, 6 P.3d 669; Kinney v. United HealthCare Services, Inc. (1999) 70 Cal. App.4th 1322, 1329, 83 Cal.Rptr.2d 348 (Kinney) ["Although both elements must be present before a contract or contract provision is rendered unenforceable on grounds of unconscionability, they are reviewed in tandem such that `the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause'"].)

(1)

Procedural unconscionability
In granting summary judgment favoring Milberg Weiss, the superior court *533 concluded Swiderski did not establish the existence of any triable factual issue on whether the Agreement was procedurally unconscionable.
"`Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." (Kinney, supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348; American Software, Inc. v. All supra, 46 Cal.App.4th at p. 1390, 54 Cal. Rptr.2d 477.) Procedural unconscionability "focuses on factors of oppression and surprise. [Citation.] The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." (Kinney, at p. 1329, 83 Cal. Rptr.2d 348.) "The second component of procedural unconscionability encompasses an aspect of surprise, with the terms to which the party supposedly agreed being hidden in a prolix printed form drafted by the party seeking to enforce them." (Ibid.)
Swiderski did not establish the surprise component of procedural unconscionability. Indeed, since the Agreement was not a clause hidden in a standardized form but instead was a separate, clearly labeled, double-spaced, nine-page document written in clear language, the obligation to arbitrate imposed by the Agreement could not have surprised Swiderski, who two months earlier had been admitted to practice law in California. (Stirlen v. Supercuts, Inc. (1997) 51 Cal.App.4th 1519, 1532, 60 Cal.Rptr.2d 138.)
With respect to the oppression component of procedural unconscionability, the declaration of Milberg Weiss's administrator indicated that the Agreement was imposed on Swiderski as a condition of employment and suggested that Swiderski had no real opportunity to negotiate. (Armendariz, supra, 24 Cal.4th at pp. 114-115, 99 Cal.Rptr.2d 745, 6 P.3d 669; Kinney, supra, 70 Cal.App.4th at p. 1329, 83 Cal.Rptr.2d 348.) Evidence also indicated Swiderski was presented with the Agreement on the date he began working for Milberg Weiss and had only a few minutes to review the Agreement. However, the fact that Attorney Swiderski was required to accept arbitration as a condition of employment did not by itself establish procedural unconscionability. As stated by the appellate court in Lagatree v. Luce, Forward, Hamilton & Scripps (1999) 74 Cal. App.4th 1105, 88 Cal.Rptr.2d 664, "cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a `take it or leave it' basis. An employee who signs such an agreement is obligated to submit employment-related disputes to arbitration; if he refuses to do so, the courts stand ready to compel arbitration." (Id. at p. 1127, 88 Cal.Rptr.2d 664.) Further, as discussed, in order to accept the law clerk position with Milberg Weiss, Swiderski quit his law clerk job at another law firm where he had just been offered a job as a full-time associate attorney. (Armendariz, at p. 115, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
On this record the superior court properly concluded as a matter of law that the Agreement was not procedurally unconscionable.

(2)

Substantive unconscionability
This evidentiary record also establishes as a matter of law that the Agreement was not substantively unconscionable. "Substantive unconscionability focuses on the actual terms of the agreement ...." (American Software, Inc. v. *534 All, supra, 46 Cal.App.4th at p. 1390, 54 Cal.Rptr.2d 477.) "While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to `shock the conscience,' or that impose harsh or oppressive terms." (24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at p. 1213, 78 Cal.Rptr.2d 533; accord, Kinney, supra, 70 Cal.App.4th at p. 1330, 83 Cal.Rptr.2d 348 [`"Substantive unconscionability' focuses on the terms of the agreement and whether those terms are `so one-sided as to "shock the conscience"'"].) However, "[w]ith a concept as nebulous as `unconscionability' it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable. The terms must shock the conscience." (American Software, at p. 1391, 54 Cal. Rptr.2d 477.)
In Armendariz, supra, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, after an extensive discussion of case law, the Supreme Court concluded various cases correctly required a "`modicum of bilaterality' in an arbitration." (Id. at p. 117, 99 Cal. Rptr.2d 745, 6 P.3d 669.)[13] However, such required modicum of bilaterality does not mean that "an arbitration clause must mandate the arbitration of all claims between employer and employee in order to avoid invalidation on grounds of unconscionability." (Armendariz, supra, 24 Cal.4th at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Instead, "an arbitration agreement imposed in an adhesive context lacks basic fairness and mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising out of the same transaction or occurrence or series of transactions or occurrences." (Ibid.) "Although parties are free to contract for asymmetrical remedies and arbitration clauses of varying scope, ... the doctrine of unconscionability limits the extent to which a stronger party may, through a contract of adhesion, impose the arbitration forum on the weaker party without accepting that forum for itself." (Id, at p. 118, 99 Cal.Rptr.2d 745, 6 P.3d 669.)[14]
*535 Characterizing the Agreement as drafted to give Milberg Weiss "every conceivable tactical advantage," Swiderski contends the Agreement in reality operated only against him while purporting to be bilateral. However, as we shall explain, the Agreement contained the legally requisite modicum of bilaterality for purposes of substantive unconscionability analysis.
First, Swiderski contends the Agreement unfairly covered all claims by Swiderski as the employee but none of the claims that employer Milberg Weiss would want to pursue. Specifically, Swiderski asserts the Agreement covered all his employee claims of any sort, except for workers compensation/unemployment insurance (with their own adjudicatory systems) and private disputes about non-firm matters, while exempting claims by Milberg Weiss for unfair competition and other actions typically brought against departing employees. However, contrary to Swiderski's assertion, the Agreement did not authorize Milberg Weiss to litigate any damage claims in court.[15] Instead, the Agreement simply authorized Milberg Weiss to seek injunctive or other equitable relief through the courts in specified circumstances of unfair competition or unauthorized disclosure of confidential information as effectively permitted by subdivision (b) of section 1281.8, a statute "enacted primarily to allow a party to an arbitration to obtain provisional judicial remedies without waiving the right to arbitrate." (Woolley v. Embassy Suites, Inc. (1991) 227 Cal. App.3d 1520, 1527, 278 Cal.Rptr. 719.)[16] Further, such exclusion of equitable remedies from the Agreement had a reasonable justification based on the business reality that as a law firm, Milberg Weiss had a responsibility to its clients to preserve the ability to seek equitable court remedies to protect client confidences and privileged attorney work product. (Armendariz, supra, *536 24 Cal.4th at pp. 117-118, 99 Cal. Rptr.2d 745, 6 P.3d 669; Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th at p. 1536, 60 Cal.Rptr.2d 138.) Further, the Agreement otherwise bound Milberg Weiss to arbitrate all other employment disputes with Swiderski, including all money damage claims, claims for recovery of stolen equipment, embezzlement, failure to repay advances, breach of contract and misrepresentation. Thus, unlike the situation in Armendariz, the Agreement here imposed an obligation on employer Milberg Weiss to arbitrate any damage-seeking trade secrets claim against employee Swiderski. (Id. at p. 120, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Also unlike the situation in Armendariz, the Agreement here did not require "employees to arbitrate their wrongful termination claims against the employer" without requiring "the employer to arbitrate claims it may have against the employees" and did not contain any damage limitations restricting the employee's damages while permitting full recovery of damages by the employer. (Id. at pp. 115-116, 121, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Similarly, unlike the situation in Kinney, supra, 70 Cal.App.4th 1322, 83 Cal.Rptr.2d 348, the Agreement here did not compel employee Swiderski to submit claims to arbitration without imposing the same requirement upon employer Milberg Weiss. (Id. at p. 1332, 83 Cal.Rptr.2d 348, cited in Armendariz, at p. 117, 99 Cal.Rptr.2d 745, 6 P.3d 669.)[17] Moreover, since the Agreement required both parties to arbitrate any claims for money damages and Swiderski's claim was only for money damages, the Agreement's exclusion of provisional equitable claims is irrelevant in this lawsuit.
Next, Swiderski contends the Agreement's prearbitration procedures were unconscionable as requiring Swiderski, as a condition of ultimately bringing his claim to arbitration, to divulge important tactical information about his position while allowing Milberg Weiss to withhold even the most basic information. Swiderski also contends the prearbitration procedures were unconscionable as requiring commencement of arbitration within one year of his termination without tolling for such procedures. However, the Agreement's prearbitration procedures requiring an initial attempt to resolve disputes through an internal grievance structure were not so onerous as to shock the conscience. Instead, in essence such procedures simply required Swiderski to identify his claim and the remedy sought. Specifically, step one of the procedures required Swiderski to submit to Milberg Weiss's administrator a writing setting forth his claim and the relief sought within 10 days after he became aware of the events giving rise to the claim. The administrator was then required to consider the claim and provide a written decision to Swiderski, who could continue to the second and last step if the decision was unsatisfactory or untimely. Step two required that Swiderski within 10 days submit his written claim and the administrator's decision to Milberg Weiss's management committee. A member of the management committee was then to consider *537 the claim and issue a written determination. If Swiderski was not satisfied with the outcome from step two or did not receive a timely written reply, he could submit the claim for final and binding arbitration. Such prearbitration procedures were clear and not difficult. Indeed, Swiderski made no contention that he encountered difficulty in complying with those procedures. Further, the Agreement provided for discovery after selection of an arbitrator to the full extent permitted by section 1283.05, a statute whose subdivision (a) has been characterized by the Supreme Court as setting forth "[adequate provisions for discovery." (Armendariz, supra, 24 Cal.4th at p. 105, 99 Cal. Rptr.2d 745, 6 P.3d 669.)[18] Moreover, the Agreement's one-year limitations period was not unconscionable. (Cf. 24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at p. 1213, 78 Cal.Rptr.2d 533 [court rejected unconscionability challenges made to other provisions of an arbitration clause that also contained a one-year limitations period].) In any event, the one-year limitations period is not relevant here since the same one-year limitation would apply to Swiderski's claim for wrongful termination if litigated in the superior court. (Barton v. New United Motor Manufacturing, Inc. (1996) 43 Cal. App.4th 1200, 1209, 51 Cal.Rptr.2d 328.)
Finally, Swiderski contends the Agreement was unconscionable as requiring each party to bear its own costs and expenses plus an equal share of the arbitrator's fees and administration fees. Specifically, such challenged clause provided: "Each Party shall bear its own costs and expenses (including attorneys' and expert witness fees) and an equal share of the Arbitrator's and administrative fees of any arbitration under this Agreement." However, the Agreement's cost allocation provision did not render the Agreement unenforceable as unconscionable. In Armendariz, supra, 24 Cal.4th 83, 99 Cal.Rptr.2d 745, 6 P.3d 669, the Supreme Court observed that "statutory or constitutional rights may be transgressed as much by the imposition of undue costs as by outright denial." (Id. at p. 109, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Accordingly, with respect to statutory claims, the Supreme Court concluded that "when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court." (Id. at pp. 110-111, 99 Cal.Rptr.2d 745, 6 P.3d 669.) However, in Armendariz, the Supreme Court did not extend that holding to the species of nonstatutory wrongful termination claim brought by Swiderski here. Further, the Agreement's cost allocation language was consistent with section 1284.2, "a default provision" *538 (24 Cal.4th at p. 112, 99 Cal.Rptr.2d 745, 6 P.3d 669) that governed the costs and fees of arbitration of Swiderski's claim. Moreover, as discussed, Swiderski failed to introduce any evidence of the actual costs of arbitration so as to establish that the cost allocation would be unenforceable as prohibitive. Finally, as noted, to the extent that an employer might be legally obligated to pay all types of costs unique to arbitration, the Agreement could be interpreted to provide that Milberg Weiss bear the arbitration forum costs and any contrary contractual language severed. (Id. at pp. 113, 122, 127, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
In sum, as a matter of law on this record, the Agreement was not substantively unconscionable.

D

Remand to Superior Court
In the superior court, the parties disputed whether Swiderski had retained or waived his right to arbitrate his wrongful termination claim against Milberg Weiss. Specifically, in seeking summary judgment, Milberg Weiss contended that Swiderski waived his right to arbitration by filing and pursuing this lawsuit. In granting summary judgment favoring Milberg Weiss, the court did not rule on the issue whether Swiderski had waived his arbitration rights. Further, as noted, Swiderski's ensuing motion for new trial alternatively sought modification of the summary judgment to confirm that Swiderski retained the right to submit his wrongful termination claim to arbitration. (§ 662.) In granting Swiderski's motion for new trial, the court made no ruling on the issue whether Swiderski retained his arbitration rights.
For purposes of these appeals, we deem Swiderski's new trial motion's alternative request as tantamount to a motion to compel arbitration necessarily raising the issue whether Swiderski had retained or waived his right to arbitrate his wrongful termination claim against Milberg Weiss, an issue never reached by the superior court. Accordingly, as we shall explain, the matter must be remanded to the superior court to entertain proceedings to determine such issue on the merits.
First, we emphasize that the issue whether a plaintiff has failed to exhaust/attempt to exhaust an arbitration remedy so as to warrant a defense summary judgment under Rounds is manifestly distinct from the separate issue whether such plaintiff has waived that arbitration remedy. Thus, although we have concluded that Rounds authorized the summary judgment procedure successfully employed by Milberg Weiss, nothing in our opinion should be construed to imply that Swiderski has waived his right to arbitrate his wrongful termination claim against Milberg Weiss. Further, we find nothing in Rounds suggesting that Swiderski should be deemed to have waived his arbitration rights. On the contrary, in Rounds's concluding paragraph, the Supreme Court stated: "In the instant case plaintiff at no time attempted to pursue its arbitration remedy. The no-strike clause was contractually subject to arbitration. The relief sought, damages, is traditionally within an arbitrator's power to award. [Citation.] Defendant until long after this suit was filed sought to compel arbitration, and asserted plaintiffs failure to arbitrate or seek arbitration as an affirmative defense. What remedies plaintiff may have to now compel arbitration must await assertion of that right. Defendant was entitled to the dismissal. The trial court's judgment is affirmed." (Rounds, supra, 4 Cal.3d at pp. 899-900, 95 Cal.Rptr. 53, 484 P.2d 1397, italics added.)
*539 Also persuasive is the appellate court's decision in Johnson v. Siegel (2000) 84 Cal.App.4th 1087, 101 Cal.Rptr.2d 412. In Johnson, the appellate court affirmed a defense summary judgment based upon the plaintiffs having filed suit without initiating contractually required arbitration. (Id. at p. 1089, 101 Cal.Rptr.2d 412.) However, the court also held that "the granting of summary judgment does not preclude [plaintiff] from filing a petition to compel arbitration." (Id. at pp. 1089-1090, 101 Cal.Rptr.2d 412.) In doing so, the court rejected defendants' contention that in addition to entitling defendants to summary judgment, Rounds also barred any further action on plaintiffs part. (Johnson, at p. 1095, 101 Cal.Rptr.2d 412.) The court stated: "If Rounds's holding were as sweeping as the [defendants] assert, then Rounds would have been wholeheartedly embraced by the defense bar. It has not. It is not even cited in The Rutter Group's treatise on alternative dispute resolution. [Citation.] Every defendantespecially clearly liable defendantscould take advantage of a plaintiff who overlooked an arbitration agreement. None would file a petition to compel arbitration when they could obtain summary judgment and escape all liability." (Id. at pp. 1095-1096, 101 Cal.Rptr.2d 412.) Citing the language in Rounds at pages 899-900, 95 Cal.Rptr. 53, 484 P.2d 1397 discussed above, the court in Johnson also observed correctly that "the Rounds court left open the question of what remedies might be available to a plaintiff who had failed to initiate arbitration notwithstanding an agreement to arbitrate. Rounds does not support the [defendants'] position that [plaintiff] cannot bring a motion to compel arbitration." (Id. at p. 1097, 101 Cal. Rptr.2d 412.) The court further noted that a "plaintiffs suing on an arbitrable claim does not per se result in a waiver of the plaintiffs right to compel arbitration." (Id. at pp. 1099, 101 Cal.Rptr.2d 412.) Finally, the court concluded that "plaintiff is not barred by res judicata from filing a petition to compel arbitration. We express no opinion on how the court should rule on such a petition, if one is filed. The trial court should weigh the same factors whether plaintiff has taken steps inconsistent with an intent to invoke arbitration, whether plaintiff has unreasonably delayed in seeking arbitration, and whether defendant has been prejudiced by any delayit weighs in any case where a petition to compel arbitration has been filed." (Id. at pp. 1099-1100, 101 Cal.Rptr.2d 412, fn. omitted.)
To avoid piecemeal litigation in the superior court and on appeal in cases where a plaintiff elects to file a conditional alternative motion to compel arbitration in the event a defense summary judgment may be granted under Rounds, trial courts are well advised to decide at one time in a single hearing all issues bearing on the enforceability of the arbitration agreement, including whether the plaintiff has waived the right to arbitration. However, with respect to the present case, we recognize that there will necessarily be two rounds in the superior court and perhaps a second round on appeal. Here, Milberg Weiss engaged in the Rounds-approved tactical maneuver of seeking summary judgment on the ground that the matters raised in Swiderski's lawsuit were subject to the valid and enforceable Agreement. Although properly granting summary judgment under Rounds, the superior court did not reach Milberg Weiss's contention that Swiderski had waived his right to arbitrate his wrongful termination claim against Milberg Weiss. Attacking the summary judgment in the superior court, Swiderski's new trial motion alternatively sought confirmation that Swiderski retained his arbitration rights. Although *540 granting a new trial, the court did not reach Swiderski's contention that he retained his right to arbitrate.
Since the factual issue whether Swiderski has retained or waived his arbitration rights was not litigated to resolution in the superior court, we do not decide such matter on appeal. However, as discussed, the law is clear that neither Swiderski's mere filing of this lawsuit nor the granting of Milberg Weiss's summary judgment under Rounds precluded Swiderski from pursuing his arbitration remedy. (Rounds, supra, 4 Cal.3d at pp. 899-900, 95 Cal.Rptr. 53, 484 P.2d 1397; Johnson v. Siegel, supra, 84 Cal.App.4th at pp. 1089-1090, 1095, 1097, 1099, 101 Cal. Rptr.2d 412.) Under these circumstances, Swiderski's new trial motion's alternative request for confirmation that he retained his right to arbitration may reasonably be deemed to have effectively constituted a conditional alternative motion to compel arbitration in the event the superior court concluded the summary judgment was proper under Rounds. Accordingly, upon remand, in entertaining proceedings to determine the issue whether Swiderski has retained or waived his right to arbitrate his wrongful termination claim against Milberg Weiss, the superior court shall weigh whether Swiderski has taken steps inconsistent with an intent to invoke arbitration, whether Swiderski has unreasonably delayed in seeking arbitration, and Whether Milberg Weiss has been prejudiced by any delay. (Johnson, at pp. 1099-1100, 101 Cal.Rptr.2d 412.)

E

Conclusion
In granting summary judgment favoring Milberg Weiss, the superior court properly concluded that as a matter of law the Agreement applied to the parties' entire employment relationship and was not unconscionable. Since the summary judgment was thus not "against law" or tainted by "[e]rror in law," the order granting new trial may not be sustained under subdivisions 6 or 7 of section 657. Further, as discussed, the new trial order may not be sustained under subdivision 4 of section 657 or under the reason stated by the superior court. Accordingly, the order granting new trial must be reversed, the summary judgment affirmed, and the matter remanded to the superior court to entertain proceedings to determine whether Swiderski has retained or waived his right to arbitrate his wrongful termination claim against Milberg Weiss.

III

DISPOSITION
The order granting new trial is reversed. The summary judgment is affirmed. The matter is remanded to the superior court to entertain proceedings to determine whether Swiderski has retained or waived his right to arbitrate his wrongful termination claim against defendants. Each side shall bear its own costs on appeal.
WE CONCUR: HALLER, J. and McINTYRE, J.
NOTES
[1] In a footnote to his demand for arbitration, Swiderski stated: "This Demand is a protective filing pending resolution of Claimant's appeal of an order granting summary judgment in favor of respondents."
[2] In the alternative, Swiderski sought modification of the summary judgment to confirm that he retained the right to submit his wrongful termination claim against Milberg Weiss to arbitration. (Code Civ. Proc., § 662.)
[3] All further statutory references are to the Code of Civil Procedure unless otherwise specified.
[4] "A motion for a new trial is appropriate following an order granting summary judgment. [Citations.] This is so, even though, strictly speaking, `summary judgment ... is a determination that there shall be no trial at all'" (Aguilar v. Atlantic Richfield Co. (2001) 25 Cal.4th 826, 858, 107 Cal.Rptr.2d 841, 24 P.3d 493.) "Inasmuch as determination of a summary judgment motion involves the trial of an issue of law, a decision granting a motion for summary judgment may be challenged by a motion for new trial." (Kohan v. Cohan (1988) 204 Cal.App.3d 915, 919, fn. 4, 251 Cal.Rptr. 570; accord Scott v. Farrar (1983) 139 Cal.App.3d 462, 467, 188 Cal.Rptr. 823; Green v. Del-Camp Investments, Inc. (1961) 193 Cal.App.2d 479, 481, 14 Cal.Rptr. 420.)
[5] For purposes of our analysis, we deem the court's stated reason for ordering a new trial as subsumed under the new trial ground set forth in section 657, subdivision 6, to wit, that the summary judgment was "against law."

With respect to the new trial ground set forth in section 657, subdivision 7, we note that during the summary judgment proceedings Swiderski never raised any "error in law" involving the issue of his attempt to pursue arbitration and thus cannot be said to have excepted to any legal error concerning such issue.
[6] For purposes of the parties' appeals here, Swiderski effectively concedes the issues alleged in his lawsuit would be covered by the Agreement if such Agreement is valid, applicable and enforceable.
[7] We note the Agreement's provision for sharing of arbitrator's costs was consistent with section 1284.2: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit."

Further, to the extent employer Milberg Weiss might be legally obligated to pay all types of costs unique to arbitration, the Agreement would have to be interpreted as providing that Milberg Weiss bear the arbitration forum costs, with any contractual language to the contrary severed. (Armendariz v. Foundation Health Psychcare Services, Inc. (2000) 24 Cal.4th 83, 113, 122, 127, 99 Cal.Rptr.2d 745, 6 P.3d 669 (Armendariz).)
[8] In 1997, a federal appellate court had observed: "There is no indication in AAA's rules that an arbitrator's fees may be reduced or waived in cases of financial hardship." (Cole v. Burns Intern. Security Services (D.C.Cir. 1997) 105 F.3d 1465, 1484-1485, cited in Armendariz, supra, 24 Cal.4th at p. 108, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
[9] Nothing in the case law relied upon by Swiderski requires departure from the analysis set forth in Parsons, supra, 62 Cal.2d 861, 44 Cal.Rptr. 767, 402 P.2d 839, or Medical Operations Management, supra, 176 Cal. App.3d 886, 222 Cal.Rptr. 455.

In Liberty Mutual Fire Ins. Co. v. McKenzie (2001) 88 Cal.App.4th 681, 687, 105 Cal. Rptr.2d 910, a summary judgment was reversed because of the case's "unusual factual matrix."
In Alpine Ins. Co. v. Planchon (1999) 72 Cal.App.4th 1316, 85 Cal.Rptr.2d 777, in expressly distinguishing the case before it from Parsons, the appellate court stated: "This was not an instance where uncontradicted extrinsic evidence was considered to interpret an ambiguous writing, thus permitting independent appellate review." (Alpine Insurance Co., at p. 1324, 85 Cal.Rptr.2d 777.) The appellate court also observed that the "critical inquiry" "was not the interpretation of Alpine's policy" but instead its application, an inquiry that would depend upon several "subsidiary" factual "determinations." (Ibid.)
In Winograd v. American Broadcasting Co. (1998) 68 Cal.App.4th 624, 80 Cal.Rptr.2d 378, the appellate court also expressly distinguished the case before it from Parsons as not involving a writing: "Plaintiff argues that since the stipulation was placed on the record and transcribed, it is a `writing' subject to the rule that interpretations of a writing are reviewed de novo on appeal so long as no conflicting extrinsic evidence has been presented. However, there are points of distinction between the instant situation and the typical situation in which a `writing' must be construed. The stipulation in question consists not of a `writing,' but instead a colloquy on the record between the court and two counsel, occurring in the context of a particular procedural posture which reflected upon the parties' respective motivations." (Winograd, at pp. 632-633, 80 Cal.Rptr.2d 378.)
In Haskell v. Carli (1987) 195 Cal.App.3d 124, 133, 240 Cal.Rptr. 439, the evidence of surrounding circumstances was not "so clear as to remove the function of interpretation from the trier of fact."
In Loree v. Robert F. Driver Co. (1978) 87 Cal.App.3d 1032, 1039, 151 Cal.Rptr. 557, the contract at issue involved parties not yet in the lawsuit.
[10] Although Swiderski asserted in his declaration that he signed the Agreement based on his understanding that his employment at Milberg Weiss would last only until May 1997, "[p]arol evidence cannot be admitted to show intention independent of an unambiguous written instrument." (Hayter Trucking, Inc. v. Shell Western E & P, Inc., supra, 18 Cal. App.4th at p. 15, 22 Cal.Rptr.2d 229.)
[11] Contrary to Swiderski's contention, the continued applicability of the February 1997 Agreement is a reasonable inference from the absence of a second arbitration agreement.
[12] The superior court stated that Swiderski did not present any evidence that the Agreement was nonnegotiable or that Milberg Weiss occupied a superior bargaining position. (West v. Henderson (1991) 227 Cal. App.3d 1578, 1586, 278 Cal.Rptr. 570.)
[13] The Supreme Court stated: "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on `business realities.' As has been recognized `"unconscionability turns not only on a `one-sided' result, but also on an absence of justification' for it."` [Citation.] If the arbitration system established by the employer is indeed fair, then the employer as well as the employee should be willing to submit claims to arbitration. Without reasonable justification for this lack of mutuality, arbitration appears less as a forum for neutral dispute resolution and more as a means of maximizing employer advantage. Arbitration was not intended for this purpose." (Armendariz, supra, 24 Cal.4th at pp. 117-118, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
[14] In Kinney, supra, 70 Cal.App.4th 1322, 83 Cal.Rptr.2d 348, in concluding that "a unilateral obligation to arbitrate is unconscionable," we stated: "The party who is required to submit his or her claims to arbitration foregoes the right, otherwise guaranteed by the federal and state Constitutions, to have those claims tried before a jury. [Citations.] Further, except in extraordinary circumstances, that party has no avenue of review for an adverse decision, even if that decision is based on an error of fact or law that appears on the face of the ruling and results in substantial injustice to that party. [Citation.] By contrast, the party requiring the other to waive these rights retains all of the benefits and protections the right to a judicial forum provides. Given the basic and substantial nature of the rights at issue, we find that the unilateral obligation to arbitrate is itself so one-sided as to be substantively unconscionable." (Id. at p. 1332, 83 Cal.Rptr.2d 348.)
[15] Specifically, the portion of the Agreement entitled "Claims Covered By This Agreement" provided in relevant part: "The claims covered by this Agreement include, but are not limited to, claims for wages or other compensation, claims for breach of any contract or covenant (express or implied), tort claims, claims for discrimination (including, but not limited to, race, color, sex, sexual harassment, religion, national origin, age, marital status, citizenship status, sexual orientation or medical condition or disability), claims for violation of any public policy, claims for benefits, claims for wrongful termination, and claims for violation of any federal, state or other governmental law, statute, regulation or ordinance."

The portion of the Agreement entitled "Claims Not Covered By This Agreement" provided: "Claims the Employee may have for workers' compensation or unemployment insurance benefits are not covered. This Agreement covers claims against partners, associates, supervisors, or other staff members involving matters occurring in the course or scope of Firm business, but does not cover purely private disputes between employees regarding non-Firm matters. Nor does this Agreement cover claims by co-workers against each other. Furthermore, this Agreement does not cover claims by the Firm for injunctive and/or other equitable relief for unfair or otherwise prohibited competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information, as to which the Firm may seek and obtain relief from a court of competent jurisdiction."
[16] Section 1281.8, subdivision (b) provides: "A party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. The application shall be accompanied by a complaint or by copies of the demand for arbitration and any response thereto. If accompanied by a complaint, the application shall also be accompanied by a statement stating whether the party is or is not reserving the party's right to arbitration."
[17] Additionally, unlike the situation in Saika v. Gold (1996) 49 Cal.App.4th 1074, 56 Cal. Rptr.2d 922, the Agreement here did not permit a trial de novo if the arbitrator's award exceeded a certain amount, a clause "tantamount to making arbitration binding when the patient lost the arbitration but not binding if the patient won a significant money judgment." (Armendariz, supra, 24 Cal.4th at p. 116, 99 Cal.Rptr.2d 745, 6 P.3d 669.) Further, unlike the situation in Stirlen v. Supercuts, Inc., supra, 51 Cal.App.4th 1519, 60 Cal. Rptr.2d 138, the Agreement here did not impose damage limitations upon the employee or contain "a waiver of jurisdictional objections by the employee if sued by the employer." (Armendariz, at p. 116, 99 Cal.Rptr.2d 745, 6 P.3d 669.)
[18] Section 1283.05 provides in relevant part: "To the extent provided in Section 1283.1 depositions may be taken and discovery obtained in arbitration proceedings as follows: [¶] (a) After the appointment of the arbitrator or arbitrators, the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures, and be subject to all of the same duties, liabilities, and obligations in the arbitration with respect to the subject matter thereof, as provided in Chapter 2 (commencing with Section 1985) of, and Article 3 (commencing with Section 2016) of Chapter 3 of, Title 3 of Part 4 of this code, as if the subject matter of the arbitration were pending before a superior court of this state in a civil action other than a limited civil case, subject to the limitations as to depositions set forth in subdivision (e) of this section." Subdivision (e) of the statute provides: "Depositions for discovery shall not be taken unless leave to do so is first granted by the arbitrator or arbitrators."